# Richmond

## FLOYD JOYNER, JR. v. COMMONWEALTH OF VIRGINIA.

June 18, 1951.

Record No. 3831.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*M. S. McClung,* for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General,* and *Frederick T. Gray, Assistant Attorney General,* for the Commonwealth.

WHITTLE, J., delivered the opinion of the court.

This case is before us upon a writ of error and *supersedeas* to a judgment rendered in the Circuit Court of Roanoke county on

September 19, 1950, wherein Floyd Joyner, Jr., herein called the defendant, was sentenced to death, pursuant to the jury's verdict, finding him guilty of murder in the first degree.

The defendant, a trusty in a convict road camp, being without funds to employ counsel, had counsel assigned him by the court.

Two assignments of error are relied upon by the defendant, as follows:

"(1) The trial court erred in refusing to declare a mistrial in response to the motion of the accused, by counsel, when the attorney for the Commonwealth commented upon the failure of the accused to testify, which action of the attorney for the Commonwealth was a direct violation of the mandate of statute 19-238 of the Code," and

"(2) The court erred in refusing to grant the accused a new trial on the grounds of after-discovered evidence."

The second assignment of error cannot be considered by this court. The judgment here complained of was entered on September 19, 1950. The trial court took no further action in the case until November 2, 1950, at which time a bill of exceptions was signed. This bill of exceptions states that on November 2, 1950, counsel for the defendant moved the court to grant the accused a new trial on the grounds of after-discovered evidence and that the court overruled the motion. The judgment entered on September 19, 1950 became final at the end of the term at which it was entered or at the expiration of fifteen days, whichever first happened, and, admittedly, here both contingencies had happened, and the trial court had no further jurisdiction over the case. See section 17-31, Code, 1950; *Allen* v. *Commonwealth,* 114 Va. 826, 77 S.E. 66; *Harley* v. *Commonwealth,* 131 Va. 664, 108 S.E. 648, and *Bridges* v. *Commonwealth,* 190 Va. 691, 58 S.E. (2d) 8.

The bill of exceptions dealing with the first assignment of error reads as follows:

"BE IT REMEMBERED THAT, upon the trial of this case in the Circuit Court of Roanoke county, Virginia, on September 18th and 19th, 1950, the defendant relying upon his constitutional and statutory rights, did not take the witness stand in his own behalf. There being no witnesses for the defendant, the defendant, by his attorney, at the conclusion of the Commonwealth's evidence, rested his case.

"Whereupon, instructions for both the Commonwealth and the defendant were presented to the Court and after some discussion agreed upon in chambers.

"Whereupon, all parties returned to the court room for argument. As the Commonwealth's Attorney, E. W. Chelf, concluded his opening argument, he made the reference, hereinafter referred to, to the failure of the accused to testify. The trial of this case not being reported, the manner and the happening of this event was agreed upon by the Commonwealth's Attorney and counsel for the defendant, in the presence of the court and stipulated and reduced to writing by a stenographer, who was called into the court's chambers, for that purpose, as follows:

" 'The closing remarks of the attorney for the Commonwealth, E. W. Chelf, in his opening argument, were that until Mr. McClung, counsel for the accused, made his argument, he, the Commonwealth's Attorney, did not know what the defense was, as the accused had not testified; and thereupon, the Commonwealth's Attorney took his seat, and Mr. McClung, counsel for the accused, began his opening argument, in which he stated that throughout the trial, he thought that the accused had had a fair trial, and was proceeding with his argument when the judge of the court stopped Mr. McClung's argument, and called the attorney for the Commonwealth, and counsel for the accused, and the accused, into chambers, and called their attention to this remark of the Commonwealth's Attorney. After some discussion, in which the attorney for the Commonwealth stated that the remark was not made with any intention to reflect upon the guilt of the defendant on account of his failure to testify, nor was it made in any wise with the intention of prejudicing the rights of the defendant, but merely for the purpose of telling the jury that he had nothing further to say until after he had heard from the attorney for the defendant. Counsel for the accused moved the court to declare a mistrial of the case on the grounds that the remarks made by the attorney for the Commonwealth were, or could be, prejudicial to the accused in the minds of the jury, which motion the court overruled, to which action of the court in overruling said motion, the accused, by his counsel, excepted on the grounds heretofore assigned; and thereupon the court had the following instruction to the jury prepared:

" 'The court instructs the jury that the failure of the accused to testify creates no presumption against him; and in con-

sidering his guilt or innocence, his failure to testify is not a circumstance which the jury is entitled to consider.'

"Then the court, the accused, and the attorneys returned to the court room and the court orally instructed the jury as to the right of the accused not to take the witness stand and told them that they were not to consider any remarks made by the Commonwealth's Attorney, as to the failure of the accused to testify.

"And thereupon the court told the jury, 'Gentlemen, I want to give you another instruction, and I want to be sure that you understand it, and that you will follow it in considering this case'; and thereupon the court read to the jury the instruction hereinabove referred to. Then the court asked the jury, 'Gentlemen, do all of you understand that instruction?', and each juror answered that he did. Then the court asked, 'In considering this case under your oath to give the accused a fair trial, will you follow that instruction?', and each juror answered that he would. The court then instructed them, 'Gentlemen, I instruct you to disregard any remarks with reference to the failure of the accused to testify. Will you follow that instruction in your consideration of this case?', and each juror answered that he would.

"And thereupon the court attached the written instruction to the other instructions, and the case proceeded with the argument of Mr. McClung.

"BE IT REMEMBERED THAT, upon the return of the jury to the court room to deliver the verdict and the verdict being 'guilty and the punishment being fixed at death' the court then sentenced the prisoner and set his execution date for December 4, 1950.

"Whereupon, counsel for the accused moved the court to set aside the verdict, as being contrary to the law and evidence, and particularly upon the ground that the remarks made by the Commonwealth's attorney in his argument were extremely prejudicial to the rights of the accused, such remarks being contrary to the rights guaranteed the accused, under the Constitution of Virginia and particularly by virtue of Section 19-238 of the 1950 Code of Virginia. The court overruled said motion, and to this action of the court, the accused, by counsel, excepted on the grounds hereinabove stated."

It must be conceded that error was committed when the attorney for the Commonwealth stated, "Until Mr. McClung, (counsel for the accused) made his argument, he, (the Common-

wealth's attorney) did not know what the defense was, *as the accused had not testified.*" (Italics ours.) This statement was in direct violation of the provisions of section 19-238, Code of 1950. This section reads:

"*Right of Accused to Testify.* In any case of felony or misdemeanor, the accused may be sworn and examined in his own behalf, and if so sworn and examined, he shall be deemed to have waived his privilege of not giving evidence against himself, and shall be subject to cross-examination as any other witness; but his failure to testify shall create no presumption against him, nor be the subject of any comment before the court or jury by the prosecuting attorney. (Code 1919, § 4778.)"

■ This brings us now to consider whether or not this error was harmless and whether or not we should pass it by under the circumstances surrounding the case. Here a man has been convicted of murder in the first degree and his punishment fixed at death. The attorney for the Commonwealth has committed error. Under the decisions of our court where we have held error of this kind to be harmless we have carefully considered the evidence in the case and have determined therefrom that the defendant's guilt had been clearly established. Wherever there was substantial conflict we have held the error to be prejudicial and have granted relief. *Elliott* v. *Commonwealth,* 172 Va. 595, 1 S. E. (2d) 273. See also cases cited in *Mitchell* v. *Commonwealth, ante,* p. 205, 64 S. E. (2d) 713.

In the instant case the Attorney General contends that, as neither the original record nor the printed record contains a transcript or a narrative statement of the evidence presented in the trial court, "It is apparent, therefore, that the defendant completely concedes that the evidence was conclusive. A statement to that effect is contained in defendant's brief at page 5. This court is placed in the position of being required to determine the validity of the assignments of error without reference to the factual situation of the case before the court."

■ We cannot agree with this contention. The assignment of error served notice upon the Commonwealth that the defendant was relying upon his legal rights, which had been violated by a representative of the Commonwealth. The effect of this notice was that he desired this court to pass upon the question. The trial court heard the evidence, which was not transcribed, and has held the error to be harmless under the circumstances. We

cannot review this decision for the evidence is not before us. The defendant has a right to have us pass upon it.

So far as we are concerned, the presumption that the error was harmful to the defendant remains. Error will be presumed prejudicial unless it plainly appears that it could not have affected the result. See Michie's Jurisprudence (Va. and W. Va.) Vol. 1, Appeal and Error, § 293; *Wolfe* v. *Commonwealth,* 167 Va. 486, 189 S. E. 320. When once error has been pointed out it should be corrected if it appears there is reasonable probability that it did any harm. *Irvine* v. *Carr,* 163 Va. 662, 177 S. E. 208.

Under these circumstances it was the duty of the Commonwealth and was within her power, by proper bill of exceptions, to have the evidence in narrative form before us for consideration. Then and only then could we say that this defendant has had a fair and impartial trial under the law and evidence. We cannot intelligently review the question as to whether the error committed was harmful or harmless until we have had an opportunity to study the question in the light of the evidence. To hold this defendant responsible for the failure to have the evidence before us would be inconsistent with his rights. The Commonwealth knew upon what assignment of error he was relying and under the circumstances of this case it was the Commonwealth's burden to show that the error was harmless.

The able trial judge caught the remarks of the Commonwealth's attorney and did what he could, through instructions, to remedy the wrong. There have been instances in which the court's instructions on the subject tend to amplify the error, in the minds of the jury. As to this we cannot intelligently rule without the benefit of the evidence.

It is contended by the Attorney General that the remarks of the Commonwealth's attorney were not "pointed" and were made unintentionally. We can assume this to be true, and yet if the remarks prejudiced the accused, and under our statute, § 19-238, Code of 1950, the presumption is that they did, we must grant relief. Many people are killed by the "unintentional" discharge of a gun; they are dead nevertheless.

The Attorney General further contends that the defendant admits, on page 5, of his brief, that the evidence against him was "conclusive" of his guilt. The statement referred to reads as follows: "There was no evidence offered in his (defendant's)

478 does not apply

behalf. The evidence presented by the Commonwealth *was sufficient* for the jury to have found its verdict." (Italics ours.)

The evidence may have been sufficient, in the absence of error, for the jury to have found its verdict. But we do not know that the evidence was "conclusive" as to his guilt. As stated before, the defendant is within his rights to ask that this court pass upon this question under all the circumstances of his case, which should include the evidence upon which the Commonwealth relies to prove his guilt. Obviously we have not had this opportunity for the evidence is not before us.

The judgment is reversed and the case is remanded for a new trial.

*Reversed and remanded.*