COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Benton and
          Senior Judge Duff
Argued at Alexandria, Virginia


ROBERT CHARLES LAIDLER

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 0161-99-4          JUDGE CHARLES H. DUFF
                                         MARCH 28, 2000
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF SHENANDOAH COUNTY
               Perry W. Sarver, Judge Designate

          Daniel J. Travostino for appellant.

          Leah A. Darron, Assistant Attorney General
          (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Robert Laidler (appellant) was convicted of two counts of

malicious wounding and one count of assault and battery.  On

appeal, he contends that the trial court erred in refusing to

admit expert testimony, in refusing to admit photographs depicting

his injuries, in finding sufficient evidence to support the

assault and battery conviction, in refusing jury instructions on

accident and unlawful wounding, and in failing to dismiss the

indictments based on a statutory speedy trial violation.  For the

reasons stated below, we affirm in part and reverse and dismiss in

part.

_____

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).

So viewed, the evidence proved that Brenda Scott ("Brenda"), who was separated from her husband Charlie Scott ("Charlie"), shared a house with appellant in February 1998. Around February 16, 1998, Brenda moved out of the house she shared with appellant and began staying at Gary Kitchen's house because a recent storm had flooded the road to Brenda's house and because she and appellant were not "getting along." On February 21, 1998, when Brenda arrived at Kitchen's house after work, appellant was there. Also present were Peggy Polson, James Polson, and Jimmy Hottle, who accompanied appellant. While discussing their relationship, appellant and Brenda argued, causing Kitchen to ask appellant to leave.

After appellant and Hottle left the house, Cindy Turner, Charlie, Roger Dellinger and Dellinger's girlfriend visited Kitchen's house. Jim Clark and Clark's girlfriend, Pam, arrived a short time later. During the evening, Brenda, Charlie, Turner, Dellinger and Dellinger's girlfriend left Kitchen's house.

Between 11:30 p.m. and midnight, Kitchen received a telephone call from appellant. Thinking it was Charlie, Kitchen addressed the caller as "Charlie," told him it was late and asked when the

group would return.  According to Kitchen, appellant said, "'I'll have something for them when I get there.'"  Kitchen then realized the caller was appellant.

Appellant arrived at Kitchen's house fifteen minutes later, accompanied by Hottle.  Clark and Kitchen went outside and talked with appellant, who was angry at being told to leave earlier. Kitchen and Clark then asked appellant to leave.  Appellant said he was not leaving and that he wanted to see Brenda.  Appellant told Clark he had something in the car for him, at which time appellant entered his car and came out holding his hand behind his back.

At that moment, the car containing Charlie, Brenda, Dellinger and Turner pulled up.  Appellant approached the returning car. Fearing for Brenda's safety, Clark tried to block appellant's way, at which time appellant struck Clark several times, inflicting stab wounds to his lip, nose, shoulder and arm.  Kitchen realized that appellant had a knife.  Several of the men then disarmed appellant and threw the knife into appellant's car.

Thereafter, appellant and Hottle entered appellant's car. Appellant then exited the car, approached Brenda and stabbed her in the stomach.  As a result of the stab wound, Brenda required surgery and was hospitalized for five days.

Turner was also injured in a scuffle with appellant.  While appellant faced away from Turner, she "jumped on [appellant's] back, and brought him to the ground . . . and proceeded hitting

- 3 -

him."  After jumping on appellant's back, Turner and appellant fell to the ground.  Turner landed on her buttocks.  She later discovered she had sustained a wound to her left buttock.

Dr. Joseph A. Haydu treated Clark and Brenda in the emergency room.  Clark sustained, inter alia, "some complicated facial lacerations, bruises, [and] a laceration on his left shoulder, back."  According to Dr. Haydu, Clark's "lacerations were quite complex" and likely required "over forty or fifty stitches."  Brenda's knife wound penetrated "the muscles of her abdomen," requiring surgery.  She was unable to work for six weeks.

None of the Commonwealth's witnesses saw anyone other than appellant armed with a weapon.  Moreover, no Commonwealth's witness saw anyone strike appellant until after appellant stabbed Clark.

EXPERT TESTIMONY

At trial, appellant sought to have Dr. Joseph Ballo provide expert testimony that the facial injuries sustained by Clark were caused by a blunt object like a fist rather than by a knife.  Clark's medical records were never admitted into evidence, Dr. Ballo was not present during Dr. Haydu's testimony and Dr. Ballo never examined Clark.  Appellant wanted Dr. Ballo to base his opinion on photographs of Clark's face admitted at trial and on hypothetical questions posed to Dr. Ballo by defense counsel based on defense counsel's recollection of Dr. Haydu's testimony.  Because Dr. Ballo was not present when Dr.

Haydu testified and because Dr. Haydu reviewed his personal medical records pertaining to Clark's injuries before he testified, records that were not admitted at trial, the trial judge refused to allow Dr. Ballo to testify.

Assuming without deciding that the trial court erred in refusing to allow Dr. Ballo to provide expert opinion testimony based upon his review of the photographs of Clark's injuries and hypothetical questions based on Dr. Haydu's testimony, we find any error harmless.

> In Virginia, non-constitutional error is harmless "when it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached."  "[A] fair trial on the merits and substantial justice" are not achieved if an error at trial has affected the verdict. Consequently, under Code § 8.01-678, a criminal conviction must be reversed unless "it plainly appears from the record and the evidence given at the trial that" the error did not affect the verdict.  An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same.

Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (citation omitted).

A review of the record demonstrates that the proffered testimony had no effect upon the verdict finding appellant guilty of the malicious wounding of Clark.  Appellant brandished a knife and attacked Clark, who merely tried to stand in

- 5 -

appellant's path to prevent an attack on Brenda Scott. Appellant bore no animus toward Clark, and Clark initiated no force against appellant, who caused serious wounds to Clark's face, shoulder and arm. It is uncontroverted that appellant stabbed Clark in the shoulder and in the arm after injuring Clark's face, and Clark testified that he initially "thought [appellant] had hit [him]" until he heard Kitchen yell that appellant had a knife.

Moreover, while cross-examining Dr. Haydu about the injury to Clark's lip, appellant's attorney elicited testimony that the injury could have been caused by "[a] fist, a knife, [or] a fall." Defense counsel was also allowed to ask Dr. Haydu whether he had ever "encountered lacerations [inside the mouth] where the history was other than from a knife?" Dr. Haydu responded, "Yes."

The record contained evidence that appellant sought to elicit from Dr. Ballo, namely, that the lip wound could have been caused by a fist. Furthermore, the evidence showed that appellant brandished a deadly weapon and stabbed Clark, who was unarmed, in the shoulder and arm. Accordingly, any error was harmless and had no effect on the jury's verdict of malicious wounding.

PHOTOGRAPHS OF APPELLANT'S INJURIES

Appellant asked the trial court to admit four photographs taken of appellant two days after the crimes. The trial court

- 6 -

refused to admit the photographs because bruises take time to appear and the photographs did not accurately depict appellant's appearance at the time of the crimes.

At trial, appellant's attorney explained, "the reason I offered the photographs was just to corroborate the fact that [appellant] was injured." On appeal, appellant contends the photographs supported his "assertion that he was struck by a tire iron" and they were "corroborative evidence supporting [his] theory" that he brandished the knife only after being attacked. Appellant also argues for the first time on appeal that the photographs "materially corroborated [his] insanity defense." Assuming the trial court erred in ruling the photographs inadmissible, we find such error harmless.

The trial court permitted appellant to describe the injuries he allegedly received during his attacks on the victims. Also, Dorothy Smallwood, a bail bondsman, testified that she visited appellant the day after the crimes. Smallwood testified that appellant "had two black eyes," "an open wound across his nose," "a bruise and scrape across the head," an apparent puncture wound on his ear and a "blood-red" eye that "was painful to look at." Moreover, a sheriff's deputy testified that appellant had a cut on his nose and was covered with blood when she arrested him. Also, Kitchen and Dellinger testified that after appellant initiated his attack on Clark, Dellinger punched appellant in the face trying to disarm him.

- 7 -

Because appellant was able to present evidence describing his facial injuries, any error in excluding the photographs was harmless.

As to appellant's assertion that the photographs were necessary to establish his insanity defense, appellant failed to make this argument to the trial court. "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998); see Rule 5A:18. Accordingly, Rule 5A:18 bars our consideration of this question on appeal. Moreover, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

ASSAULT & BATTERY OF CINDY TURNER

> Assault and battery . . . requires proof of "an overt act or an attempt . . . with force and violence, to do physical injury to the person of another," "whether from malice or from wantonness," together with "the actual infliction of corporal hurt on another . . . willfully or in anger." One cannot be convicted of assault and battery "without an intention to do bodily harm -- either an actual intention or an intention imputed by law . . . ."

Boone v. Commonwealth, 14 Va. App. 130, 132-33, 415 S.E.2d 250, 251 (1992) (citations omitted).

Turner jumped on appellant's back, forced him to the ground and, as a result of her action, sustained an injury when she hit the ground. There was no evidence that appellant threatened or directed any violence towards Turner. Thus, the record contains

no evidence that appellant committed "an overt act or an attempt . . . with force and violence, to do physical injury to" Turner or that appellant possessed the requisite intent to do bodily harm to Turner. Therefore, there was insufficient evidence to support appellant's conviction for the assault and battery of Turner. Accordingly, that conviction is reversed, and the indictment is dismissed.

JURY INSTRUCTION: UNLAWFUL WOUNDING

Appellant contends that the trial court erred in refusing his four proposed instructions defining unlawful wounding. The instructions related to the injuries to Clark and Brenda and defined sudden heat of passion and mutual combat.[1]

"When one instruction correctly states the law, the trial court does not abuse its discretion by refusing multiple instructions upon the same legal principle." Cirios v.

---

[1] Contrary to appellant's assertion that the "instructions were taken from the Virginia Model Jury Instructions, No. 34.500 and are correct statements of the law," the current edition of Virginia Model Jury Instructions contains no Instruction No. 34.500. Chapter 34 of the Virginia Model Jury Instructions relates to Illegal Gambling. Chapter 33 of the Virginia Model Jury Instructions relates to homicide, and Instruction No. 33.500 contained in that chapter provides an instruction on voluntary manslaughter, which requires the Commonwealth to prove an intentional killing, committed while "in the sudden heat of passion upon reasonable provocation; [or] in mutual combat." I Virginia Model Jury Instructions, Criminal 33.500 (1999 cum. supp.). Moreover, the Model Instruction in Chapter 37, entitled "Malicious Wounding and Lesser Included Offenses Combined Instruction," contains no language of mutual combat. See II Virginia Model Jury Instructions, Criminal 37.100 (1999 cum. supp.).

- 9 -

Commonwealth, 7 Va. App. 292, 303-04, 373 S.E.2d 164, 170 (1988). The principles pertaining to aggravated malicious wounding, malicious wounding, unlawful wounding and heat of passion were sufficiently set forth in granted Instructions 8, 9 and 12. Instructions 8 and 9 instructed the jury that if it finds that the Commonwealth failed to prove malice, then it should find appellant guilty of unlawful wounding of Clark and Scott, respectively. Instruction 12 defined malice and instructed the jury that "[h]eat of passion excludes malice." Furthermore, we find the evidence did not support an instruction on mutual combat. See Harper v Commonwealth, 165 Va. 816, 820, 183 S.E. 171, 173 (1936) (holding that "[o]ne who is assaulted may and usually does defend himself, but the ensuing struggle cannot be accurately described as mutual combat").

The trial court properly and sufficiently instructed the jury regarding unlawful wounding. Accordingly, the trial court did not err in refusing appellant's proffered instructions.

### STATUTORY SPEEDY TRIAL VIOLATION

Appellant contends the trial court "erred in not dismissing the indictments because of failure to try [him] within the time period prescribed in the speedy trial statute."

"The protection granted an accused under [Virginia's speedy trial statute] is not self-operative. 'It may be claimed, or it may be waived.' Failure to invoke the provisions of the statute until after final judgment is a waiver of the protection

afforded thereunder." Brooks v. Peyton, 210 Va. 318, 321, 171 S.E.2d 243, 246 (1969) (involving Code § 19.1-191, former speedy trial statute) (citation omitted). See also Stephens v. Commonwealth, 225 Va. 224, 230, 301 S.E.2d 22, 25 (1983) (stating same as it relates to Code § 19.2-243, the current speedy trial statute). Moreover, "[t]he Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree, 26 Va. App. at 308, 494 S.E.2d at 488; see Rule 5A:18.

Although counsel and the trial judge informally discussed the speedy trial requirements, the record fails to show that appellant alleged a speedy trial violation or moved to dismiss the indictments based on Code § 19.2-243.

Accordingly, Rule 5A:18 bars our consideration of this question on appeal. Moreover, because delays occasioned by appellant's requested mental evaluations and his notice of insanity defense were attributable to appellant so that the trial commenced within the statutory time limit, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

CONCLUSION

In summary, we affirm appellant's malicious wounding convictions, finding any errors in refusing to admit the testimony of Dr. Ballo or the photographs depicting appellant's injuries harmless. Because there was insufficient evidence that

- 11 -

appellant assaulted Turner, we reverse that conviction and dismiss the charge.  Because the trial court correctly instructed the jury on unlawful wounding and because a mutual combat instruction was not warranted under the facts, the trial court did not err in refusing appellant's proffered instructions.  We do not address appellant's alleged violation of the speedy trial statute because he failed to make this argument in the trial court.

<u>Affirmed in part,</u>
<u>reversed and</u>
<u>dismissed in part.</u>

- 12 -

Benton, J., concurring, in part, and dissenting, in part.

I concur in the parts of the opinion reversing the conviction of Robert Charles Laidler for assault and battery, upholding the trial judge's refusal of instructions, and finding that the speedy trial issue was not properly preserved for appeal. I dissent, however, from the parts of the opinion finding harmless the trial judge's refusal to permit Dr. Ballo to testify and refusal to admit in evidence Laidler's photographs.

## I.

According to the Commonwealth's witnesses, Laidler stabbed and cut Jim Clark with a knife during a verbal argument. They testified that no physical altercation occurred between Clark and Laidler before Laidler stabbed and cut Clark several times.

In his defense, Laidler testified that he and Clark argued after Clark threatened him. The argument then escalated into a fistfight between them. Laidler testified that Gary Kitchen, who was standing behind Clark, walked off during the fight. As Laidler and Clark fought, someone hit Laidler "with [a blunt] object, across the bridge of his nose." Laidler testified that he then rose from the ground, reached inside his car for a knife to protect himself, and cut Clark once.

The trial judge erred in ruling that Laidler could not call as a witness Dr. Joseph Ballo. The record establishes that Dr. Ballo would testify that Clark's facial injuries were caused by

- 13 -

fists rather than a knife.  That testimony, if believed by the jury, would have tended to prove, consistent with Laidler's defense, that he and Clark had been in a fistfight.

The rule is well settled that an expert in a criminal case may "testify . . . on the basis of evidence adduced at trial." Buchanan v. Commonwealth, 238 Va. 389, 416, 384 S.E.2d 757, 773 (1989).  The record reveals that the evidence at trial provided a sufficient factual basis for the admission of Dr. Ballo's opinion.  Clark's photograph had been admitted in evidence.  In addition, Dr. Joseph Haydu had extensively testified concerning Clark's injuries.  Thus, the trial judge should have permitted Dr. Ballo to "give an opinion based upon facts in evidence assumed in a hypothetical question." Simpson v. Commonwealth, 227 Va. 557, 565, 318 S.E.2d 386, 391 (1984) (citation omitted).

Moreover, the error was not harmless.  "Error will be presumed prejudicial unless it plainly appears that it could not have affected the result." Joyner v. Commonwealth, 192 Va. 471, 477, 65 S.E.2d 555, 558 (1951).  Thus, to find harmless error "'it [must] plainly appear[] from the record and the evidence given at the trial that 'the error did not affect the verdict." Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (quoting Code § 8.01-678).

Whether Clark's facial wounds were caused by a knife or by a fist was put at issue by the conflict between Laidler's testimony and the testimony of the Commonwealth's witnesses.

- 14 -

Laidler's defense to this prosecution was self-defense. He also contended that he acted in the heat of passion and not maliciously. The trial judge instructed the jury on both of those issues.

The trial judge's ruling that barred Dr. Ballo's testimony deprived Laidler of relevant evidence clearly germane to his defense. Laidler claimed that he and Clark engaged in a fistfight before Laidler was assaulted with a blunt instrument. If Dr. Ballo's testimony was believed, it provided the jury with a basis to credit Laidler's testimony explaining why he reached for his knife. Furthermore, Dr. Haydu's testimony was qualitatively different than the proffered testimony of Dr. Ballo. Dr. Haydu merely testified that a laceration, which is "a tearing or cutting," may be caused by "a fist, a knife, a fall." He also testified that he had encountered lacerations that were caused by a fist. That testimony is significantly more general than Dr. Ballo's proffered testimony that Clark's facial injuries were caused, in fact, by a fist, not a knife.

The Commonwealth had the burden to prove from the evidence in the record that the trial judge's erroneous ruling was harmless. Joyner, 192 Va. at 476-77, 65 S.E.2d at 558; Beverly v. Commonwealth, 12 Va. App. 160, 164, 403 S.E.2d 175, 177 (1991). This record does not establish that the error was harmless.

- 15 -

The trial judge also erred in refusing to admit in evidence photographs showing Laidler's injuries.  When the party offering photographic evidence demonstrates its relevance, it is admissible.  See Lucas v. HCMF Corp., 238 Va. 446, 451, 384 S.E.2d 92, 95 (1989).  The Supreme Court has "long recognized [the relevance of photographs] and admitted photographs . . . [to illustrate the testimony of a witness] by holding that a photograph which is verified by the testimony of a witness as fairly representing what that witness has observed is admissible in evidence."  Ferguson v. Commonwealth, 212 Va. 745, 746, 187 S.E.2d 189, 190 (1972).

Furthermore, the decision to exclude from evidence the photographs of Laidler's injuries, while admitting the photographs of Clark's injuries, was unduly prejudicial to Laidler.  The jury had both the testimonial descriptions and photographic proof of Clark's injury to review in its deliberations.  In considering Laidler's claim that Clark inflicted an equal if not greater injury to him, however, the jury had only testimonial evidence without any tangible corroboration.  Due to the imbalance in the evidence on this critical issue, we cannot say that "the error did not affect the verdict."  Lavinder, 12 Va. App. at 1005, 407 S.E.2d at 911. The photograph would have corroborated Laidler's testimony on an issue material to his defense and provided a precise

counterpoint to the damaging photographic evidence admitted to buttress the testimony of the Commonwealth's witnesses.

For these reasons, I would reverse the malicious wounding convictions and remand for a new trial.