BENTON, J.,
dissenting.
For the reasons I gave in Luginbyhl v. Commonwealth, 46 Va.App. 460, 478-85, 618 S.E.2d 347, 357-60 (2005) (Benton, J., dissenting), I would hold that admission of the evidence violated Alan Luginbyhl’s rights as protected by the Confrontation Clause and, further, that the error was not harmless.
I.
This appeal challenges the admissibility of a certificate of breath analysis containing the attestation of a government employee who did not testify at trial. Luginbyhl contends that by admitting the certificate into evidence, the trial judge violated his Sixth Amendment right of confrontation.
The certificate of analysis, which the trial judge admitted in evidence over a hearsay objection, is signed by a “breath test operator” under the following attestation:
I CERTIFY THAT THE ABOVE IS AN ACCURATE RECORD OF THE TEST CONDUCTED; THAT THE TEST WAS CONDUCTED WITH THE TYPE OF EQUIPMENT AND IN ACCORDANCE WITH THE METHODS APPROVED BY THE DEPARTMENT OF CRIMINAL JUSTICE SERVICES, DIVISION OF FORENSIC SCIENCE; THAT THE TEST WAS CONDUCTED IN ACCORDANCE WITH THE DIVISION’S SPECIFICATIONS; THAT THE EQUIPMENT ON WHICH THE BREATH TEST WAS CONDUCTED HAS BEEN TESTED WITHIN THE PAST SIX MONTHS AND FOUND TO BE ACCURATE; THAT PRIOR TO ADMINISTRATION OF THE TEST THE ACCUSED WAS ADVISED OF HIS RIGHT TO OBSERVE THE PROCESS AND SEE THE BLOOD ALCOHOL READING ON THE EQUIPMENT USED TO PERFORM THE BREATH TEST, AND THAT I POSSESS A VALID LI *68 CENSE TO CONDUCT SUCH TEST, GIVEN UNDER MY HAND THIS 25TH DAY OF NOVEMBER, 2003.
These assertions were made to satisfy Code § 18.2-268.9. The record establishes, however, that Luginbyhl did not have the opportunity to cross-examine the breath test operator to test the veracity of his statements. Without dispute, the operator’s attestation statements constitute hearsay. The issue in this case is whether that hearsay was testimonial and thus barred by the Sixth Amendment.
The Sixth Amendment of the Constitution of the United States provides, in pertinent part, that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.” The United States Supreme Court in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), recently interpreted the requirements of the Sixth Amendment by reviewing its text and the historical record.
Examining the historical background of the Sixth Amendment’s Confrontation Clause, the Court held that “history supports two inferences about the meaning of the Sixth Amendment.” 541 U.S. at 50, 124 S.Ct. at 1363. The Court identified those inferences as follows:
First, the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused____ The Sixth Amendment must be interpreted with this focus in mind.
The historical record also supports a second proposition: that the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination. The text of the Sixth Amendment does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts.
*69 Id. at 50, 53-54, 124 S.Ct. at 1363, 1365. In view of this historical analysis, the Supreme Court overruled the reliability test set forth in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), because of “its demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude.” Crawford, 541 U.S. at 63, 124 S.Ct. at 1371. The previously accepted reliability test allowed hearsay evidence to be admitted as long as it had “adequate ‘indicia of reliability’ ” and the witness was unavailable. Roberts, 448 U.S. at 66, 100 S.Ct. at 2539. As the Court explained in Crawford: “Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.” 541 U.S. at 68-69, 124 S.Ct. at 1374. Thus, the Sixth Amendment gives a criminal defendant the right to confront testimonial evidence. Id.
In plain terms, Crawford describes a “core class of ‘testimonial’ statements” as including “affidavits,” any “similar pretrial statements that declarants would reasonably expect to be used prosecutorially,” and “statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.” Id. at 51-52, 124 S.Ct. at 1364. When governmental agents are involved, this concern is heightened. As the Crawford Court noted, the “[ijnvolvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse—a fact borne out time and again throughout a history with which the Framers were keenly familiar.” 541 U.S. at 56 n. 7, 124 S.Ct. at 1367.
The operator conducted the breath analysis and prepared the attestation solely to provide evidence in court to prove the facts necessary to convict Luginbyhl. This cannot be fairly disputed. Indeed, the attestation statement asserts the existence of seven facts or circumstances said to be true by the “breath test operator.” Simply put, the certificate of blood analysis that was admitted in evidence in this case is testimo *70 nial under the narrowest of the Crawford definitions and, thus, falls squarely within the Crawford bar.
Luginbyhl accurately asserts that the “certificate ... was a formalized, ex parte statement made by a government agent for the sole purpose of being used prosecutorially in court in lieu of his live testimony.” It seems to me that the use of this type of statement was the paradigmatic violation the Supreme Court emphasized in Crawford. As the Court discussed in its historical analysis, the judges at a treason trial against Sir Walter Raleigh permitted the prosecution to read to a jury an affidavit or letter from an alleged co-conspirator, Cobham, in “[t]he most notorious instance of civil-law examination” in a criminal trial. 541 U.S. at 44, 124 S.Ct. at 1360. This was an abuse the Confrontation Clause was enacted to end.
The Raleigh trial itself involved the very sorts of reliability determinations that Roberts authorizes. In the face of Raleigh’s repeated demands for confrontation, the prosecution responded with many of the arguments a court applying Roberts might invoke today: that Cobham’s statements were self-inculpatory, that they were not made in the heat of passion, and that they were not “extracted from [him] upon any hopes or promise of Pardon.” It is not plausible that the Framers’ only objection to the trial was that Raleigh’s judges did not properly weigh these factors before sentencing him to death. Rather, the problem was that the judges refused to allow Raleigh to confront Cobham in court, where he could cross-examine him and try to expose his accusation as a lie.
Id. at 62, 124 S.Ct. at 1370-71 (citations omitted). The Supreme Court observed that despite Raleigh’s freedom to confront in court those who read Cobham’s letter, this was an insufficient protection of a right to confrontation because “[l]eaving the regulation of out-of-court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices.” Id. at 51, 124 S.Ct. at 1364. In other words, to protect the right of confrontation, Cobham’s letter would be inadmissible under the Sixth Amendment because the Confrontation Clause “re- *71 fleets a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined.” Id. at 61, 124 S.Ct. at 1370.
The Commonwealth suggests that the certificate is not “testimonial” because Crawford limits the definition of “testimonial” statements to “(1) ‘prior testimony at preliminary hearings, before a grand jury, or at a former trial,’ and-(2) statements garnered from witnesses during ‘police interrogations.’ ” Crawford, however, expressly includes other formulations of “testimonial” statements, such as “extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions, ... [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.” 541 U.S. at 51-52, 124 S.Ct. at 1364 (citations omitted). As the Court noted, “[t]hese formulations all share a common nucleus” because they are statements reasonably expected to be used at trial. See id. at 52, 124 S.Ct. at 1364. The Court did not just focus on the “form” of the evil but, rather, upon the substance: depriving a defendant of the opportunity to meaningfully confront the state’s evidence.
The certificate of analysis does not evade the definition of hearsay by reporting statements generated by a machine. It clearly comprises information supplied by a person and an attestation by a person of facts. Indeed, even a cursory review of the seven facts the operator certifies demonstrates they are not mere statements generated by a machine. For example, the operator attests “that prior to administration of the test the accused was advised of his right to observe the process and see the blood alcohol reading on the equipment used to perform the breath test.”
Assertions that the breath test operator was not an “accuser” and that this evidence is somehow “neutral” presupposes that cross-examination of the blood test operator could not serve any valid purpose, when, in fact, there were a number of *72 effective means to cross-examine the operator concerning each of the attestations in the certificate. The certificate proclaimed that the equipment, the record it generated, the breath test, and the operator of the equipment all yielded a result that conformed to statutory requirements and that incriminated Luginbyhl. Without cross-examination, the certificate had the effect of reinforcing the Commonwealth’s theory of prosecution. The “crucible of cross-examination” could have exposed any weaknesses in the operator’s qualifications, his perception, the state of the equipment, or the test protocol.
The Commonwealth’s characterizations of the operator’s statements as “neutral” and “non-accusatory” also suggest a type of safeguard that is intended to render the statements more reliable or trustworthy as evidence. Nothing in Crawford declares that the hearsay statement must accuse Luginbyhl of wrongdoing to be testimonial or that statements which appear neutral in character are nontestimonial. Indeed, nothing within the meaning of “testimonial” equates with “accusatory.” Furthermore, it is a dubious conclusion that evidence created for use by the prosecutor at trial could ever be “neutral” in the context of the adversarial system in a criminal proceeding. “The Framers would be astounded to learn that ex parte testimony could be admitted against a criminal defendant because it was elicited by ‘neutral’ government officers.” Crawford, 541 U.S. at 66, 124 S.Ct. at 1373.
Giving a trial judge the discretion to determine whether a statement is “accusatory” or “neutral” smacks of the “open ended balancing” reliability analysis the Court rejected in Crawford: “The Roberts test allows a jury to hear evidence, untested by the adversary process, based on a mere judicial determination of reliability ... [and] replaces the constitutionally prescribed method of assessing reliability with a wholly foreign one.” Id. at 62, 124 S.Ct. at 1370. The Supreme Court warned that these were the very kinds of “vague” and “manipulable” standards the Framers “were loath to leave ... in judicial hands.” Id. at 67, 124 S.Ct. at 1373. Thus, the Court rejected the general concept of “replacing categorical *73 constitutional guarantees with open-ended balancing tests” and held that those tests “do violence to [the Framers’] design.” Id. at 67-68, 124 S.Ct. at 1373. According to the Supreme Court, the Confrontation Clause “commands, not that evidence be rehable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.” Id. at 61, 124 S.Ct. at 1370. Thus, the Supreme Court explicitly and “once again rejected] the view that the Confrontation Clause applies of its own force only to in-court testimony, and that its application to out-of-court statements introduced at trial depends upon ‘the law of Evidence for the time being.’ ” Id. at 50-51, 124 S.Ct. at 1364 (citation omitted). These rulings perforce reject injecting a manipulable evidentiary standard to avoid the constitutional command of Crawford under the guise of characterizing the evidence as “neutral” or “not accusatory.”
Simply put, “[admitting statements deemed rehable by a judge is fundamentally at odds with the right of confrontation.” Id. at 61, 124 S.Ct. at 1370. Whether the evidence is accusatory or neutral, it does “bear testimony.” Id. at 51, 124 S.Ct. at 1364. It was prepared for use at trial by a government agent; it was a substitute for an actual witness; it was admitted in evidence without the opportunity of cross-examination. The relevant factors under Crawford are that the evidence in the certificate was generated to discover and report evidence against Luginbyhl, the accused, and was later used at trial for that purpose without the opportunity of cross-examination.
The Commonwealth cites several appellate courts that have ruled affidavits to be nontestimonial. Other appehate courts, however, addressing this precise issue, have ruled that similar affidavits are testimonial and barred by Crawford. See, e.g., Shiver v. State, 900 So.2d 615, 618 (Fla.App.2005) (holding that a breath test affidavit “contained statements one would reasonably expect to be used prosecutorially, ... was made under circumstances which would lead an objective witness to reasonably believe the statements would be available for trial,” and was testimonial); City of Las Vegas v. Walsh, 120 Nev. *74 392, 91 P.3d 591, 595 (2004) (holding that an affidavit “offered to prove certain facts concerning use of certain devices ... related to determining presence of alcohol” is one prepared for use at trial and is testimonial); People v. Rogers, 8 A.D.3d 888, 780 N.Y.S.2d 393, 397 (2004) (holding that a blood test report “generated by the desire to discover evidence against defendant” was testimonial).
In any event, to decide this case, we need not go beyond the text of Crawford. Plainly understood, the language in Crawford leads to the conclusion that this certificate of analysis is testimonial just as “affidavits ... the defendant was unable to cross-examine.” 541 U.S. at 51, 124 S.Ct. at 1364. As the Supreme Court noted, “[w]here testimonial statements are involved, we do not ... leave the Sixth Amendment’s protection to the vagaries of the rules of evidence.” Id. at 61, 124 S.Ct. at 1370. In other words, “[dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes.” Id. at 62, 124 S.Ct. at 1371.
II.
Without addressing the substantive issue on appeal, the majority concludes that any alleged error in admitting the certificate was harmless. The majority bases this on Luginbyhl’s statement to the officer that he was “drunk” and an alcoholic and on the officer’s observations of his demeanor and conduct. I would hold, however, that the record fails to demonstrate that the trial judge’s decision was not affected by the statutory presumption of intoxication triggered by the certificate of analysis. See Code § 18.2-269(A)(3).
We succinctly addressed in Williams v. Commonwealth, 32 Va.App. 395, 528 S.E.2d 166 (2000), the contours of the analysis required when a Confrontation Clause error occurs.
Constitutional error is harmless ... only if “the beneficiary of the constitutional error ... proves beyond a reasonable doubt that the error complained of did not contribute to the *75 verdict obtained.” Chapman v. California, 386 U.S. 18, 24[, 87 S.Ct. 824, 828, 17 L.Ed.2d 705] (1967). “The test, therefore, is not whether laying aside the erroneously admitted evidence there was other evidence sufficient to convict beyond a reasonable doubt ..., but, more stringently, ‘whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.’ ” Thompson v. Leeke, 756 F.2d 314, 316 (4th Cir.1985) (citation omitted). In other words, even if “the other evidence amply supports the ... verdicts, [error is not harmless when] the disputed testimony may well have affected the ... decision.” Cartera v. Commonwealth, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978).
An “emphasis and perhaps overemphasis, upon the [concept] of ‘overwhelming evidence’ ” has the effect of clouding the relevant question “ ‘whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.’ ” Chapman, 386 U.S. at 23[, 87 S.Ct. at 827] (footnote and citations omitted). As the Supreme Court has stated, “the correct inquiry is whether, assuming that the damaging potential of the [evidence] were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.” [Delaware v.] Van Arsdall, 475 U.S. [673,] 684[, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986) ]; see also Olden v. Kentucky, 488 U.S. 227, 232[, 109 S.Ct. 480, 483, 102 L.Ed.2d 513] (1988). Thus, “a harmless error analysis ... [is not] simply a sufficiency of the evidence analysis.” Hooker v. Commonwealth, 14 Va.App. 454, 458, 418 S.E.2d 343, 345 (1992).
Williams, 32 Va.App. at 399-400, 528 S.E.2d at 168-69 (alterations in original).
When the trial judge admitted the certificate of analysis, its statement that Luginbyhl’s blood alcohol level reached .24% triggered the statutory presumption of intoxication. Code § 18.2-269(A)(3) provides that if a chemical analysis of the accused’s blood shows that the blood alcohol level was .08% or more, “it shall be presumed that the accused was under the influence of alcohol.” It is reasonably possible that the judge *76 attached significant weight to the incriminating evidence in the certificate in spite of strong independent evidence of Luginbyhl’s intoxication. See Thomas v. Town of Marion, 226 Va. 251, 254, 308 S.E.2d 120, 122 (1983); Castillo v. Commonwealth, 21 Va.App. 482, 487-91, 465 S.E.2d 146, 148-50 (1995).
Indeed, in Thomas, where the trial judge erred in admitting into evidence a certificate of analysis showing the accused had a blood alcohol content of .17% by weight by volume, the evidence proved the accused was unsteady on his feet, “had a strong odor of alcohol about his person, his speech was slurred, and his face was flushed,” and, further, the accused “admitted consuming two beers and a shot of whiskey.” 226 Va. at 253, 308 S.E.2d at 121. Nonetheless, the Supreme Court ruled that the non-constitutional error was not harmless because it was “probable” the trier of fact “attached great weight to the incriminating information in the certificate.” Id. at 254, 308 S.E.2d at 122. This ruling, using the less exacting non-constitutional error standard, see Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001), Lavinder v. Commonwealth, 12 Va.App. 1003, 1005-06, 407 S.E.2d 910, 911 (1991), renders it more than probable in this case that evidence of similar quality was, likewise, not harmless when viewed under the standard required for constitutional error. See Chapman, 386 U.S. at 23, 87 S.Ct. at 827 (adopting the standard in Fahy v. Connecticut, 375 U.S. 85, 86-87, 84 S.Ct. 229, 230-31, 11 L.Ed.2d 171 (1963), “whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction”); see also Long v. Commonwealth, 20 Va.App. 223, 227, 456 S.E.2d 138, 140 (1995) (holding that the Commonwealth failed to meet its burden of proving that the error in severing charges for trial did not affect both the verdict and sentence).
Likewise, Jenkins v. Commonwealth, 254 Va. 333, 492 S.E.2d 131 (1997), demonstrates the strictness of the constitutional error standard, which requires the Commonwealth to establish beyond a reasonable doubt that the erroneous admission of the evidence was harmless regarding punishment as *77 well.[4] In that case, the trial judge allowed a clinical psychologist to testify that based on his ten meetings with a child that “the child ‘had been sexually abused.’ ” Id. at 336, 492 S.E.2d at 132. The jury convicted the defendant of aggravated sexual battery, recommending a twenty-year sentence, the maximum under the statute. Id. at 335, 492 S.E.2d at 132. Although this Court ruled that the trial judge deprived the defendant of his constitutional right to a jury trial by allowing an expert to testify on the ultimate issue, this Court held the error to be harmless in light of the defendant’s confession. Id. The Supreme Court disagreed and reversed the conviction. Id. at 338, 492 S.E.2d at 133. The Supreme Court held that although the defendant’s admission of a single episode of abuse sufficiently supported a finding of guilt, the expert testimony “was prejudicial for purposes of fixing the quantum of punishment imposed” because the expert testimony alluded to repeated abuse. Id. The Court could not find that the trial judge’s error was harmless beyond a reasonable doubt and *78 remanded the case for a new trial. Id. at 338, 492 S.E.2d at 133-34.
Significantly, the psychologist did not directly testify in Jenkins that the abuse was ongoing or otherwise particularly severe. Yet, the possibilities that the trier of fact inferred the severity of the abuse from the inappropriate testimony and that the verdict could have been affected by that inference were enough to keep the error from being harmless. The error in Luginbyhl’s case is more harmful than the error in Jenkins because Code § 18.2-269(A)(3) essentially required that the trial judge consider the certificate of analysis as presumptive of guilt. In view of this statutory presumption of guilt, this record in this case does more than merely raise the possibility that the fact finder was swayed by a possible inference drawn from the improperly admitted evidence.
I believe we cannot reasonably conclude from the circumstances of this case that the government has met its burden of proving beyond a reasonable doubt that the error could not have affected the verdict or the sentence. For these reasons, I would hold that the admission of the document violated Luginbyhl’s rights as protected by the Confrontation Clause and that a reasonable possibility exists that the error did affect the verdict and the sentence.

. I disagree with the majority’s assertion that Rules 5A:18, 5A:12(c), and 5A:20 preclude consideration of whether the alleged error could have affected Luginbyhl’s sentence. See supra note 3. Luginbyhl properly objected when the evidence was offered at trial. Luginbyhl had no obligation to ask the trial judge to conduct a harmless error review of the judge's own error when the judge admitted the evidence. See Hackney v. Commonwealth, 28 Va.App. 288, 295-96, 504 S.E.2d 385, 389 (1998) (holding that a trial judge may not consider the possible harm of an error as a basis of an initial decision to admit improper evidence).
The harmless error inquiry is the process by which a reviewing court identifies trial error and then determines whether that error affected the judgment. See Sochor v. Florida, 504 U.S. 527, 539-40, 112 S.Ct. 2114, 2122-23, 119 L.Ed.2d 326 (1992); Pope v. Illinois, 481 U.S. 497, 504, 107 S.Ct. 1918, 1923, 95 L.Ed.2d 439 (1987). This is so because the purpose of the harmless error rule "is 'to conserve judicial resources by enabling appellate courts to cleanse the judicial process of prejudicial error without becoming mired in harmless error.’ ” United States v. Hasting, 461 U.S. 499, 509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983) (citation omitted). Furthermore, the principle is well established that the Commonwealth bears the burden of proving the error was harmless. Chapman, 386 U.S. at 24, 87 S.Ct. at 828; see also Joyner v. Commonwealth, 192 Va. 471, 476-78, 65 S.E.2d 555, 558-59 (1951). Thus, although Luginbyhl is obligated to raise the alleged error on appeal, he is not obligated to raise the harmless error doctrine.