BETTY J. LUCAS, ADMINISTRATRIX, ETC.

V.

HCMF CORPORATION, T/A, ETC.

Record Nos. 870666 and 880530

September 22, 1989

Present: All the Justices

*John P. Harris, III* for appellant.
*Henry H. McVey, III (McGuire, Woods, Battle & Boothe,* on brief), for appellee.

Justice Lacy delivered the opinion of the Court.

This appeal involves two separate actions brought by the appellant, Betty J. Lucas, Administratrix of the Estate of Flossie Pumphrey (Lucas), against HCMF Corporation, t/a Heritage Hall Health Care (Heritage Hall), a nursing home. The first case (Record No. 870666) sought damages for personal injuries allegedly sustained by Flossie Pumphrey while under the care of Heritage Hall. The trial court dismissed the case, holding that the evidence presented by Lucas supported a wrongful death action, not a personal injury claim as stated in the motion for judgment. Lucas appealed the dismissal as well as the trial court's evidentiary

ruling that photographs showing Mrs. Pumphrey's condition when she left Heritage Hall could not be introduced unless accompanied by comparison photographs taken when she entered Heritage Hall.

During the pendency of the appeal, Lucas filed a second suit against Heritage Hall (Record No. 880530) seeking damages for the wrongful death of Flossie Pumphrey. The trial court dismissed the wrongful death action on *res judicata* grounds. Lucas also appealed that decision.

We consolidated the cases for appeal and reverse both judgments.

Flossie Pumphrey was an 87 year-old patient at Mary Washington Hospital in September of 1984. Her treating physician, Dr. Rebecca Bigoney, diagnosed Mrs. Pumphrey as suffering from several ailments including resolving staphloccal pneumonia, mild organic brain syndrome, urinary tract infection, and early decubitus ulcers, commonly known as bed sores, on her left hip and upper buttocks. In Dr. Bigoney's opinion, the only ailment potentially affecting Mrs. Pumphrey's life expectancy was the organic brain syndrome.

On September 21, 1984, Mrs. Pumphrey was moved to Heritage Hall. Twenty-four days later, on October 15 she returned to Mary Washington Hospital. At that time the ulcer on her hip had become three large ulcers that reached to the bone and tunneled through the skin to meet one another. The ulcer on her buttocks which had been one inch in diameter had grown to eight inches in diameter and extended to the bone. Additional ulcers had developed on each of her ribs, on her left arm and wrist, and on the left side of her face.

The standard method of treating decubitus ulcers and preventing their spread is keeping the patient mobilized, turning the patient every two hours and periodically moving the patient into a chair. Heritage Hall's records reflected that Mrs. Pumphrey was not turned at all from September 22 through October 1; nor was she turned on October 4, 7, or 12. Heritage Hall's records do not indicate that she was moved on a regular basis. On her return to Mary Washington Hospital, Mrs. Pumphrey received emergency treatment for the ulcers. She died on November 14, 1984.

## I

## PERSONAL INJURY ACTION

On May 22, 1986, Lucas sued Heritage Hall for personal injuries allegedly sustained by Mrs. Pumphrey while a patient. At trial, which commenced on March 19, 1987, the evidence was directed primarily to Heritage Hall's lack of treatment of Mrs. Pumphrey's ulcers and the subsequent deterioration in her condition.

Dr. Bigoney, Lucas' first witness, testified regarding Mrs. Pumphrey's condition both before and after her stay at Heritage Hall and the treatment received by Mrs. Pumphrey when she was brought back to Mary Washington Hospital in October. On cross examination, counsel for Heritage Hall asked Dr. Bigoney whether the treatment received at Heritage Hall was a cause of or contributed to Mrs. Pumphrey's death. Dr. Bigoney responded that, in her opinion, the treatment hastened Mrs. Pumphrey's death. Heritage Hall immediately moved to dismiss the action on the ground that Dr. Bigoney's testimony supported a wrongful death action, not the action for personal injuries filed by Lucas. Following argument on the motion, the trial court dismissed the case, denying Lucas' request to put on further testimony regarding the cause of death and to amend her pleadings.*

Lucas could not recover damages for both personal injury and wrongful death based on the treatment of Mrs. Pumphrey by Heritage Hall. Code § 8.01-56. Code § 8.01-25 entitles a decedent's personal representative to file a motion for judgment seeking damages for personal injuries sustained by the decedent; however, if the injuries cause death, the recovery must be sought under Code § 8.01-50, the wrongful death statute. In choosing to file a personal injury action, Lucas had to prove the elements of that claim to recover damages. Moreover, she was entitled to the opportunity to prove those elements. Dismissal of the action prior to completion of her evidence deprived Lucas of that opportunity and, therefore, constituted error.

Counsel for Heritage Hall concedes that the trial court prematurely dismissed the action, but argues that the error was harmless. Heritage Hall, citing *Brown* v. *Koulizakis*, 229 Va. 524, 331

---

* Although pleading in the alternative under Rule 1:4(k) was addressed by counsel in oral argument, this issue was not preserved for appeal, and, therefore, we do not address it. Rule 5:25.

S.E.2d 440 (1985), posits that if one's negligence "hastens" death, it is synonymous with destroying "any substantial possibility of the patient's survival" and becomes a proximate cause of death. *Id.* at 532, 331 S.E.2d at 446. Therefore, Heritage Hall contends that Dr. Bigoney's testimony, regarding Heritage Hall's treatment "hastening" Mrs. Pumphrey's death, leaves Lucas with only a wrongful death action, and further testimony would not alter the result.

While a *party's testimony* is binding upon him and he cannot ask the court to disregard his own testimony, the same is not true of the testimony of a *party's witness. Massie* v. *Firmstone*, 134 Va. 450, 114 S.E. 652 (1922).

> As a general rule when two or more witnesses introduced by a party litigant vary in their statements of fact, such party has the right to ask the court or jury to accept as true the statements most favorable to him. In such a situation he would be entitled to have the jury instructed upon his contention.

*Id.* at 462, 114 S.E.2d at 656. Lucas sought to introduce the testimony of Dr. Muncie who had performed the autopsy on Mrs. Pumphrey which indicated that the cause of death was pneumonia. Had Lucas been allowed to proceed with this evidence, the trier of fact would have had to resolve conflicting testimony. Therefore, the action of the trial court denied Lucas the opportunity to complete the presentation of her evidence and, under these circumstances, was not harmless error. Thus, the judgment of the trial court in Record No. 870666 must be reversed.

## II

## WRONGFUL DEATH ACTION

Following the dismissal of her personal injury action, Lucas filed a wrongful death action against Heritage Hall pursuant to Code § 8.01-50. Like the personal injury action, the suit was based on the treatment received by Mrs. Pumphrey while a patient at Heritage Hall.

Heritage Hall sought dismissal on *res judicata* grounds reasoning that the prior disposition of the personal injury action was a final judgment on the merits, and the wrongful death suit was the same cause of action involving the same parties. The trial

court agreed and dismissed the wrongful death suit. As a result of our disposition of Record No. 870666, no final judgment in the personal injury suit is outstanding. Because all elements necessary to support a finding based on *res judicata* are lacking, we must reverse the judgment of the trial court in Record No. 880530.

## III

## ADMISSION OF PHOTOGRAPHS

In the personal injury action, Lucas also appealed the trial court's ruling that photographs of Mrs. Pumphrey's ulcers on her return to Mary Washington Hospital would not be admitted unless accompanied by photographs of the condition of the ulcers when she arrived at Heritage Hall. While the trial court reserved ruling on the admissibility of the photographs until they actually were offered in evidence, it clearly required that "in a before and after situation, the medium of demonstration has got to be so similar that there is a comparison. . . . In other words, if you have an illustration of the before, then an illustration of the after is proper." No photographs of the ulcers had been taken before Mrs. Pumphrey entered Heritage Hall; therefore, the trial court's statement effectively prevented the introduction of the photographs under any circumstances.

■ Photographs are admissible when they bear some relevance to a matter in controversy. The party offering the photograph must demonstrate its relevance and lay a foundation for its introduction into evidence. Photographs properly are excluded if they are "calculated to arouse the sympathies or prejudices of the jury." *Wright* v. *Kelly, Adm'r*, 203 Va. 135, 141, 122 S.E.2d 670, 675 (1961). These determinations of relevancy and materiality are within the discretion of the trial judge. *Id.* The "same medium" prerequisite espoused by the trial court in this case was unrelated to issues of relevancy, materiality and jury sensitivity. In imposing this prerequisite for the admission of the photographs, the trial court abused its discretion.

## IV
## CONCLUSION

For the reasons set out above, we will reverse the judgments of the trial court and remand each case for further proceedings consistent with this opinion.

Record No. 870666 *Reversed and remanded.*
Record No. 880530 *Reversed and remanded.*