Present: All the Justices

CENTRA HEALTH, INC.,
T/A LYNCHBURG GENERAL
HOSPITAL

                                              OPINION BY
v.  Record No. 080008          JUSTICE LAWRENCE L. KOONTZ, JR.
                                          January 16, 2009
LEONARD J. MULLINS, ADMINISTRATOR
OF THE ESTATE OF LEONARD MULLINS,
DECEASED, ET AL.


        FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
               J. Leyburn Mosby, Jr., Judge


    In this appeal involving a medical malpractice action,

the principal issue we consider is whether the circuit court

erred in failing to require the administrators of a decedent's

estate to elect between their alternative claims for wrongful

death, Code § 8.01-50, and a survival action for personal

injuries to the decedent, Code § 8.01-25, which the

administrators alleged arose from the same acts of medical

negligence.  We further consider whether the circuit court

erred in not striking the administrators' evidence on the

survival claim and in subsequently confirming the jury's

verdict in favor of the administrators on that claim.

                          BACKGROUND

    A prevailing party that comes before us with a jury

verdict approved by the trial court "stands in the most

favored position known to the law."  <u>Bitar v. Rahman</u>, 272 Va.

130, 137, 630 S.E.2d 319, 323 (2006)(internal quotation marks omitted). Accordingly, since the jury in this case returned its verdict for the administrators, "we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the [administrators], the prevailing part[ies] at trial." Lo v. Burke, 249 Va. 311, 318, 455 S.E.2d 9, 13 (1995).

On November 3, 2004, Leonard Mullins, age 84, was admitted to Lynchburg General Hospital, a medical facility operated by Centra Health, Inc., for treatment of a broken hip sustained in a fall. As a result of negligence by hospital staff in the insertion and maintenance of a Foley catheter, a thin tube placed into the bladder to drain urine, Mullins developed a urinary tract infection. Following surgery to repair the broken hip, hospital staff failed to timely remove the catheter as ordered and failed to recognize and report the development of the urinary tract infection. Mullins was discharged from the hospital on November 12 to be transferred to a nursing home. Mullins was readmitted to the hospital on the following day for treatment of the continuing urinary tract infection and remained there until his death on November 21, 2004.

On June 10, 2005, Leonard J. Mullins and Elizabeth P. Shergill, Mullins' son and daughter, qualified as co-

2

administrators of Mullins' estate.  On December 1, 2005, the administrators filed a motion for judgment[1] against Centra Health alleging that the negligence of its employees proximately caused personal injuries to Mullins.  The administrators asserted a claim for wrongful death, alleging that Mullins' death was the result of sepsis caused by the urinary tract infection, and an alternate survival claim for the personal injuries sustained by Mullins prior to his death as a result of the hospital's negligent treatment resulting in the urinary tract infection and its attendant complications. The administrators requested a jury trial.

Thereafter, Centra Health filed an answer and grounds of defense.  Centra Health denied generally that its employees had been negligent or that any negligence had caused Mullins' injuries or his death.  Centra Health further averred that it would rely on the theory that Mullins' death resulted from an intervening cause as an affirmative defense to the wrongful death claim.

---

[1] This case was filed before we amended our rules, effective January 1, 2006, to provide that a civil action, which includes legal and equitable causes of action, is commenced by filing a "complaint."  Rules 3:1 and 3:2; see also Ahari v. Morrison, 275 Va. 92, 96 n.2, 654 S.E.2d 891, 893 n.2 (2008).

3

Along with its answer and grounds of defense, Centra Health filed a motion requesting that the circuit court compel the administrators to elect between the survival and wrongful death causes of action. Citing Hendrix v. Daugherty, 249 Va. 540, 547, 457 S.E.2d 71, 75 (1995), Centra Health maintained that because the administrators could "not recover for the same injury under the survival statute and the wrongful death statute," an election was required at some point prior to trial.

In a memorandum of law, the administrators responded to Centra Health's motion. The administrators contended that no election between the survival and wrongful death causes of action was required until after the jury had received the evidence and a verdict had been returned. The principal support for this contention was by citation to prior case decisions from various circuit courts. Additionally, the administrators asserted that our decision in Lucas v. HCMF Corp., 238 Va. 446, 449-50, 384 S.E.2d 92, 94 (1989), supported their position that a personal injury survival claim and a wrongful death claim could be presented to the trier of fact when the defendant contested the issue whether the alleged negligence that purportedly injured the decedent also contributed to the decedent's death. The administrators conceded that "if Mullins' injuries caused his death, the

4

[administrators] are entitled to recover only on a wrongful death claim."  However, the administrators maintained that so long as Centra Health contested the issue of proximate causation with respect to the wrongful death claim, the administrators should be entitled to proceed on both claims and to have the issue of proximate causation decided by the jury.

Pursuant to a pre-trial scheduling order, the administrators filed a designation of expert witnesses. Darlene Hinton, R.N. was designated as a standard of care expert and Dr. Daniel Pambianco was designated as a causation expert.  According to the designation, Dr. Pambianco would testify that as a result of the failure to perform under the standard of care that would be established by Hinton's expected testimony, "Mullins was permitted to develop a massive urinary tract infection, ileus,[2] and nutritional compromise, from which his death resulted."  The administrators further reserved the right to elicit testimony

---

[2] Ileus, in general terms, is a condition that is commonly marked by painful distended abdomen, vomiting of dark or fecal matter, toxemia, and dehydration and that results when the intestinal contents back up because peristalsis fails although the lumen is not occluded.  See Merriam-Webster's Medical Desk Dictionary 324 (1993).

from Mullins' health care providers or expert witnesses called by Centra Health.

On June 29, 2007, Centra Health filed a memorandum of law in support of its motion to compel the administrators to elect between the survival and wrongful death causes of action. Centra Health contended that because the administrators could not recover for the same injury under both causes of action, the administrators should not be permitted to present evidence of the differing elements of damages under each cause of action to the jury. Centra Health asserted that permitting the administrators to present such evidence would result in prejudice to Centra Health because "[i]t is unreasonable to believe that the jury would be able to successfully absorb all of the [administrators'] proposed evidence, some of which is only relevant to the survival action, and some of which is only relevant to a wrongful death action, compartmentalize it based upon the different theories of the case, and reach a true verdict." In the alternative, Centra Health contended that because the administrators would present expert testimony that the alleged negligence of the hospital staff was the cause of Mullins' death, the court should dismiss the survival action because "Virginia law mandates that the [administrators] proceed to trial on only a wrongful death cause of action."

6

Responding to Centra Health's contentions, the administrators asserted that they were "not required to elect between a survival action or wrongful death action before trial if the evidence supports both recoveries."  This was so, the administrators maintained, because Centra Health continued to contest that the negligence of its employees caused Mullins' death and, thus, "the jury should be permitted to resolve all disputed issues of causation."

On July 6, 2007, the circuit court conducted a hearing on Centra Health's motion to compel the administrators to elect between the survival and wrongful death causes of action.[3] Following brief arguments in which the parties reiterated the positions taken in their memoranda of law, the court overruled Centra Health's motion, stating that it was inclined to "send the case to the jury under both theories at this point."  The court noted, however that it could revisit the issue whether an election was required "once we get into the evidence" or on a motion to strike the evidence at the conclusion of the administrators' case.

---

[3] The circuit court did not directly address Centra Health's alternative assertion that the court should dismiss the survival action based on the administrators' designation of expected expert testimony.  Centra Health did not assign error to the court's failure to rule on this issue and, accordingly, we will not address it further in this opinion.

7

A jury trial on the administrators' motion for judgment was held on July 10, 11 and 12, 2007. As relevant to the issues raised in this appeal, Dr. Pambianco testified that Mullins received "poor catheter care . . . which increased the chance of urinary tract infection and contributed to it."[4] He further testified that because hospital staff failed to recognize that Mullins had developed the infection, Mullins "developed multisystem failure and a systemic infection" which developed into sepsis, an infection of the blood, prior to being discharged from his first hospitalization. Mullins also developed ileus, causing him to suffer "abdominal pain and discomfort" and distention of his abdomen. He also experienced "delirium during the course of his [first] hospitalization" resulting from changes in blood pressure and his body's other responses in an attempt to fight the infection. Dr. Pambianco concluded that the negligence of Centra Health's employees during the first hospitalization

---

[4] Hinton testified regarding the standard of care for nursing staff relevant to the use of a Foley catheter, following and documenting actions taken upon physician's instructions, and observing, detecting and treating a patient's urinary tract infection. Centra Health did not assign error challenging the sufficiency of the evidence to support the jury's determination that its employees violated this standard of care in the treatment of Mullins. Accordingly, the jury's determination that the hospital staff was negligent is not at issue in this appeal.

"culminated in [Mullins] developing a serious infection that overwhelmed his body and was the cause of his death."

Counsel for the administrators then asked Dr. Pambianco, "What would have been the effect of the additional Foley [catheter] care that was not provided during the second hospitalization, either as it relate[d] to Mr. Mullins' cause of death or as it related to additional injury to Mr. Mullins?" Dr. Pambianco stated that while proper care might have improved Mullins' ability to fight off the infection, he believed that Mullins' death probably could not have been avoided during the second hospitalization as "any chance he would have had to recover at that juncture would have been diminished." He further testified, however, that had Mullins received proper medical care for the urinary tract infection during the first hospitalization, he would not have required a second hospitalization. Thus, Dr. Pambianco opined that it was the failure to recognize and treat the infection that directly contributed to Mullins' death.

During cross-examination, counsel for Centra Health asked Dr. Pambianco whether Mullins' medical records established that Mullins suffered from various other medical conditions, including age-related cerebral atrophy, hypertension, degenerative joint disease, and chronic anticoagulation. Dr. Pambianco confirmed that, based on his review of the medical

9

records, Mullins had suffered from those conditions, had undergone an aortic valve replacement, and had a history of atrial fibrillation and suffered a mild congestive heart failure. Dr. Pambianco further agreed that at the time of the initial admission to the hospital, Mullins' health was "guarded" and that given his medical history and age, Mullins had "a fairly high mortality and morbidity rate" as a result of his undergoing treatment for the fracture of his hip.

The administrators presented extensive evidence with respect to damages for the wrongful death. This evidence came principally in the form of loss of solace testimony from the administrators, their sisters Mary Harris, Ann Thomas, and Helen Sud, and their mother, Helen G. Mullins. These witnesses also testified as to Mullins' pain and suffering during his two hospitalizations in support of the damages claimed for the survival action.

At the conclusion of the administrators' case-in-chief, Centra Health renewed its motion to compel an election between the causes of action and also moved to strike the evidence as to the survival action. Centra Health also asserted that as Dr. Pambianco had testified that the alleged negligence had resulted in Mullins' death "it would be appropriate to strike the surviv[al] claim." The administrators, while agreeing that there could only be one recovery, contended that both

causes of actions should be submitted to the jury "to resolve the disputed issue of causation." The circuit court overruled both the renewed motion to compel election and the motion to strike, stating that it would "instruct the jury that it's an alternative damage situation."

Centra Health presented expert testimony on proximate causation from Dr. William A. Petri, Jr. and Dr. Malcolm Cothran. Doctors Petri and Cothran both opined that Mullins' death resulted from his pre-existing medical conditions, rather than as a result of the urinary tract infection.

At the conclusion of its evidence, Centra Health again renewed the motion to compel an election between the two causes of action. The circuit court overruled the motion, stating "we have got a situation where we have a classic jury issue on causation and whether it's a wrongful death and/or survival action . . . there's evidence both ways."

The circuit court granted instructions proffered by the administrators that directed the jury to first consider whether Centra Health, through its employees, had been negligent in failing to provide an appropriate standard of care to Mullins and, if so, whether that "negligence was a proximate cause of injury or death to Leonard Mullins." In Instruction No. 16, which it later referred to as "the wrongful death damages [instruction]," the court advised the

11

jury as to the evidence it could consider in awarding damages for wrongful death including "the sorrow, mental anguish, and loss of solace suffered by" Mullins' family, expenses for his hospitalization incident to the injuries that resulted in his death, and funeral expenses. Similarly, in Instruction No. 17, "the survival damage[s] instruction," the court advised the jury that if it were to award damages for personal injuries to Mullins "that did not cause his death," it should only consider the effect of those injuries on Mullins' health, his pain, suffering and inconvenience, and the medical expenses he incurred as a result. Centra Health noted its objection to these instructions, but did not request a separate instruction expressly cautioning the jury that if it chose to award damages under one theory it should disregard the damages evidence relevant to the other cause of action.

After the circuit court read the two damages instructions to the jury, the court provided this additional guidance:

> They [the two damages instructions] are effectively going to be mutually exclusive. If you decide to award damages, you can do it under one.
>
> If you find negligence caused the death, you can do it under [the wrongful death damages instruction]. If you find it just caused the injury, you can do it under [the survival damages instruction], but you can't do both. You've got to choose. That's a jury issue for [you] to resolve, and you have to determine one or the other.

12

That will become apparent on the verdict form, but you don't award either unless you find for the plaintiffs and that the defendant was negligent.

The jury was given a multi-part verdict form, prepared by the administrators, that provided for alternative verdicts on either wrongful death or the survival personal injury claims. The verdict form directed the jury to complete only one of the two sections, the first of which permitted the jury to make individual awards to Mullins' widow and children as well as awards for medical and funeral expenses, while the second directed the jury to award damages in accord with the instruction for the personal injury survival claim. Each part also permitted the jury to render a verdict for Centra Health. The verdict form expressly referenced the two instructions detailing the source of damages for each claim. In objecting to the verdict form Centra Health stated that it would "incorporate by reference [its] previous arguments" concerning its contention that the administrators should be required to elect between the two causes of action before the case was submitted to the jury.

The circuit court gave the jury the following guidance with respect to its consideration of the verdict and how to render its decision on the verdict form:

> [W]e have a verdict form and it's a little more complicated than the normal civil case because it has a Part A and Part B to it.

13

The Part A part is involving the wrongful death, and the Part B is what we call a survival action or injuries before Mr. Mullins died.

The jury . . . has got to decide whether or not there is any negligence, violation of [the] standard of care.  And if that standard of care was violated, did it cause [Mullins'] injury or did it cause his death.

The circuit court then directed that if the jury found that Centra Health was not liable for either Mullins' death or any injury to him, it could indicate this by rendering its verdict for Centra Health under either of the two parts of the verdict form.  The court further instructed that if the jury "decide[d] that the hospital is responsible, through its nurses, for the wrongful death of Mr. Mullins," it was to apportion the damages for the wrongful death among his survivors and to award damages for the medical and funeral expenses on the "wrongful death" part of the verdict form. If, however, the jury found that Centra Health had been negligent in its care of Mullins, but "his death wasn't the result of any negligence or causation of the hospital nurse[s]," the jury should award damages under the "survival action" part of the form.

When the jury returned its verdict, consistent with the instructions on the verdict form and the directions of the circuit court, it rendered a verdict only on one of the two

14

claims.  In reading the verdict, the circuit court noted, "On Part A [the wrongful death claim] there is no verdict.  Part B [the survival personal injury claim], we the jury, on the issues joined, instruction number 17, find the verdict in favor of the plaintiff and set his damages at [$]325,000."  After the jury was dismissed, Centra Health was given leave to file post-trial motions within fifteen days.

On July 23, 2007, Centra Health filed a motion to set aside the verdict.  Therein, Centra Health contended both that the verdict on the personal injury survival claim was excessive and that it was not supported by "any expert testimony that the negligence of the [hospital staff] injured Mr. Mullins but did not result in his death."  Centra Health maintained that the verdict was excessive because the jury "was clearly influenced by the testimony of the pain and suffering of the statutory beneficiaries, which evidence is inadmissible in a surviv[al] cause of action."

In a responding memorandum of law opposing Centra Health's motion to set aside the verdict, the administrators contended that there was ample evidence in the record that the negligence of the hospital staff injured Mullins causing both his physical suffering and additional medical expenses.  The administrators further contended that the jury's determination that Mullins was injured by the hospital staff's negligence

15

was supported by the testimony of Centra Health's expert witnesses, who had testified to the medical consequences of the urinary tract infection, and by the testimony of family members who observed Mullins' pain and suffering. Conceding that "[t]he jury concluded [that] the [hospital staff's] negligence injured Mullins, but did not cause his death," the administrators nonetheless contended that, because Centra Health contested the issue of causation, the circuit court had properly allowed the loss of solace testimony that was relevant only to damages for wrongful death as the jury could have concluded that Centra Health was liable for Mullins' death.

Thereafter, the circuit court conducted a hearing on Centra Health's motion to set aside the verdict. At the conclusion of the hearing, the court ruled that there was sufficient evidence to support the jury's verdict awarding damages on the survival action and that the damages awarded were not excessive.

In an order dated October 2, 2007, the circuit court entered a final judgment on the jury's verdict awarding the administrators $325,000. We awarded Centra Health this appeal.

## DISCUSSION

Centra Health raises the following issues in this appeal:

16

1. The circuit court erred by denying the defendant's motion to elect, and permitting the plaintiff to submit both a wrongful death claim and a survivorship claim to the jury, rather than requiring the plaintiff to elect between them prior to trial.

2. The circuit court erred by denying the defendant's motions to strike and/or for directed verdict, and submitting the survivorship claim to the jury, even though the plaintiff's sole medical expert unequivocally testified that the defendant's negligence resulted in the death of the decedent, Mr. Mullins, and where the plaintiff offered no expert testimony that the negligence of the defendant injured Mr. Mullins but did not result in his death.

3. The circuit court erred by failing to set aside the jury's verdict of $325,000.00 on the plaintiff's survivorship claim as reflecting that the jury misconceived or misunderstood the facts or the law, and as not supported by the evidence or the law.

We begin our discussion of these issues by reviewing the statutory scheme and the relevant case law concerning whether and under what circumstances the personal representative of a decedent can maintain concurrent causes of action seeking damages for both personal injuries suffered by the decedent under the survival statute and for the decedent's death arising from the same negligent acts or omissions under the wrongful death statute. Code § 8.01-25, which governs survival of causes of action that accrue during a decedent's lifetime, provides in relevant part:

> Every cause of action whether legal or equitable, which is cognizable in the Commonwealth

17

of Virginia, shall survive . . . the death of the person in whose favor the cause of action existed . . . . Provided, further, that if the cause of action asserted by the decedent in his lifetime was for a personal injury and such decedent dies as a result of the injury complained of with a timely action for damages arising from such injury pending, the action shall be amended in accordance with the provisions of § 8.01-56.

Code § 8.01-50, which governs actions for wrongful death of a decedent, provides in relevant part:

> A. Whenever the death of a person shall be caused by the wrongful act, neglect, or default of any person or corporation . . . the person who, or corporation . . . which, would have been liable, if death had not ensued, shall be liable to an action . . . notwithstanding the death of the person injured . . . .

Code § 8.01-56, which in part governs the maintenance of a pending personal injury action as a survival action following the death of the plaintiff, provides in relevant part:

> . . . when a person who has brought an action for personal injury dies pending the action, such action may be revived in the name of his personal representative. If death resulted from the injury for which the action was originally brought, a motion for judgment and other pleadings shall be amended so as to conform to an action under § 8.01-50, and the case proceeded with as if the action had been brought under such section. In such cases, however, there shall be but one recovery for the same injury.

We have previously addressed the interaction of these three statutes in the direct appeals of Lucas v. HCMF Corp. and Hendrix v. Daugherty, the cases principally relied upon in

18

the circuit court by the administrators and Centra Health respectively, as well as in answering certified questions of law from the United States Court of Appeals for the Fourth Circuit in Bulala v. Boyd, 239 Va. 218, 389 S.E.2d 670 (1990). Each of these cases involved a distinct set of facts, and the holding in each case was, in part, determined by unique circumstances that permitted this Court to address whether an election between causes of action was required under those particular facts, obviating the need for this Court to undertake a broader consideration as to whether and when an election would be required in every such case.

In Bulala, for example, the plaintiff was an infant child who had suffered catastrophic injuries as the result of medical malpractice during her birth. An action brought on behalf of the child in a federal district court resulted in a verdict awarding damages against the obstetrician attending her birth, but the child died before the district court could rule on post-trial motions and enter a final judgment. Id. at 223, 389 S.E.2d at 672. After the district court declined to set aside the verdict and order a new trial to determine damages based on wrongful death, the obstetrician appealed.

Upon referral of certified questions of law from the United States Court of Appeals, we addressed, inter alia, the issue of the effect, under Code §§ 8.01-21, 8.01-25, and 8.01-

19

56, of the child's death on the district court's ability to enter a final judgment. We concluded that Code § 8.01-21, which provides that "[w]hen a party dies . . . if [the death] occurs after verdict, judgment may be entered as if [the death] had not occurred," permitted the district court to enter a final judgment in the case notwithstanding the defendant's contention that the personal injury action was still "pending" and, thus, that Code §§ 8.01-25 and 8.01-56 mandated that the action be converted to a wrongful death action. Id. at 234-35, 389 S.E.2d at 678-79. We concluded that there was no conflict between the statutes because Code §§ 8.01-25 and 8.01-56 were enacted to extend the application of Code § 8.01-50 to include cases not yet filed or pending at the time of the decedent's death, whereas Code § 8.01-21 codified the common law rule that a verdict in a case where a party subsequently dies stands because the case " 'has been completely litigated.' " Id. at 235, 389 S.E.2d at 679 (quoting Boyd v. Bulala, 647 F. Supp. 781, 795 (W.D. Va. 1986)).

In Lucas, an administratrix of a decedent's estate brought a medical malpractice survival action against a nursing home. During the administratrix's case-in-chief, her medical expert agreed during cross-examination that the negligence of the nursing home's staff "hastened [the

decedent's] death."  Lucas, 238 Va. at 449, 384 S.E.2d at 93.

Immediately following this testimony, the nursing home moved

to strike the evidence, contending that the administratrix was

required to plead a wrongful death action rather than a

survival action.  The circuit court sustained the motion and

dismissed the case with prejudice notwithstanding the

administratrix's contention that she could present evidence

from another expert to establish an intervening cause of death

or that she should be permitted to amend the pleadings and

proceed on a claim for wrongful death.  Id.  Subsequently, the

administratrix filed a wrongful death action, which the

circuit court dismissed on res judicata grounds.  Id. at 448,

384 S.E.2d at 93.

We consolidated the subsequent appeals and reversed the

judgment of the circuit court in both cases.  While we

implicitly recognized that under Code § 8.01-56 the

administratrix could not recover on both a survival claim for

personal injuries sustained by the decedent and for a claim of

wrongful death if both the injuries and the death arose from

the same negligent acts, we held that the administratrix

should have been permitted in the first suit to present

further evidence that the decedent's death could have resulted

from an intervening cause and then have "the trier of fact

. . . resolve [the] conflicting testimony."  Id. at 450, 384

21

S.E.2d at 94.  Because reversal of the judgment dismissing the survival action eliminated the res judicata bar to the wrongful death action, we reversed the judgment in the second case as well.  Id. at 450-51, 384 S.E.2d at 94.  In remanding both cases, however, we expressed no opinion as to whether the administratrix should be permitted to join the two causes of action or whether and when the administratrix would be required to elect between them if she did so.

Most recently in Hendrix, we addressed issues concerning concurrent survival and wrongful death actions in the context of a claim for legal malpractice.  The plaintiffs alleged that in the underlying medical malpractice case, the defendant attorneys were negligent in advising an election to pursue only the wrongful death action when that cause of action was subsequently dismissed because it previously had been nonsuited and the refiled action was untimely under Dodson v. Potomac Mack Sales & Service, 241 Va. 89, 400 S.E.2d 178 (1991).[5]  Hendrix, 249 Va. at 542-43, 457 S.E.2d at 73.

---

[5] In Dodson, we held that Code § 8.01-229(E)(3) did not apply to wrongful death actions and, thus, the nonsuit of a wrongful death action did not entitle the plaintiff to refile within six months of the nonsuit, but could only file a new action under the original statute of limitations period. Dodson, 241 Va. at 94, 400 S.E.2d at 181.  The General Assembly subsequently amended the wrongful death limitation of action statute, making the six-month period applicable.  See Code § 8.01-244(B).

22

In the legal malpractice action, the plaintiffs alleged alternative theories that the defendant attorneys had been negligent either in failing to pursue the survival action or by failing to recognize that the wrongful death action would be time barred. The defendant attorneys contended that the order of the circuit court in the underlying medical malpractice action requiring an election between the two causes of action was legally correct and, accordingly, the plaintiffs could not be permitted to pursue a legal malpractice action with respect to both claims, since in the original action the plaintiffs could have prevailed under only one claim. Id. at 546, 457 S.E.2d at 75.

Although the circuit court had disposed of the legal malpractice case by sustaining the defendant attorneys' demurrer to the plaintiffs' amended motion for judgment and, thus, had not yet required the plaintiffs to elect between the two causes of action, in reversing and remanding the case for further proceedings, we observed that:

> The plain language contained in Code §§ 8.01-25 and -56 unequivocally mandates that a person may not recover for the same injury under the survival statute and the wrongful death statute. There can be but one recovery. Hence, the plaintiffs in this action, as a matter of law, could not have recovered in the underlying tort action against defendants on both theories of wrongful death and survival. Therefore, it necessarily follows that in the present action, at an appropriate time after discovery has been completed, the plaintiffs must be

23

required to elect whether they will proceed against the defendant attorneys on the theory that the attorneys breached a duty owed to the plaintiffs in the prosecution of the wrongful death action or breached a duty owed to the plaintiffs in the prosecution of the survival action.

Id. at 547, 457 S.E.2d at 75-76 (emphasis added).

Since deciding Hendrix, we have not been afforded the opportunity to address further the circumstances that would constitute the "appropriate time after discovery has been completed" at which a circuit court must require an election between a survival personal injury claim and a wrongful death claim. Nor have we specifically addressed whether there can be circumstances in which that "appropriate time" might be after the trier of fact has resolved disputed issues of liability. However, as the parties noted in the circuit court and on brief in this appeal, a number of circuit court cases tried since Lucas have dealt with these and related issues, but without any consistent agreement as to when and under what circumstances an election of remedy would be required.[6] The

---

[6] Compare Brothers v. Rockingham Mem. Hosp., Docket No. CL07-00620 (Rockingham Co. Cir. Ct. March 5, 2008); McReynolds v. Altamont Manor, Inc., Docket No. CL03-94 (Russell Co. Cir. Ct. April 12, 2005); Williams v. Med. Facilities of America, Docket No. CL03-3400 (Va. Beach Cir. Ct. February 16, 2005); McGuin v. Mount Vernon Nursing Ctr. Assocs., L.P., 44 Va. Cir. 453 (Fairfax Co. Cir. Ct. 1998); Thornburg v. Manor Healthcare Corp., 37 Va. Cir. 273 (Richmond Cir. Ct. 1995); Tucker v. Ware, 10 Va. Cir. 454 (Richmond Cir. Ct. 1988) (cases in which an election was not required or was deferred), with Atkins v.

24

facts and the procedural posture of the present case, therefore, provide this Court with the opportunity to address directly the issues left unresolved by Lucas, Bulala, and Hendrix.

At the outset, we note that the question whether an election of remedy can be required arises only in a case where the plaintiff brings a survival action and wrongful death action together in a single lawsuit after the death of the decedent. The mandatory requirement for the conversion of the personal injury claim into one for wrongful death applies only in those cases in which the facts establish that the "decedent die[d] as a result of the injury complained of," Code § 8.01-25, and "death resulted from the injury for which the action was originally brought," Code § 8.01-56.

In Lucas, we recognized that under Code § 8.01-56 "there shall be but one recovery for the same injury" for which both personal injury and wrongful death actions might be brought by the plaintiff. Lucas, 238 Va. at 449, 384 S.E.2d at 94; see also Brammer v. Norfolk & W. R. Co., 107 Va. 206, 214, 57 S.E. 593, 596 (1907) ("whether that action be brought by the

_____

Chesler, 50 Va. Cir. 365 (Charlottesville Cir. Ct. 1999); DeRosa v. Meloni, 14 Va. Cir. 62 (Alexandria Cir. Ct. 1988); Rhodes v. Painter, 6 Va. Cir. 68 (Fredericksburg Cir. Ct. 1983) (cases in which an election was required or recovery was otherwise limited to a claim for wrongful death).

25

injured party in his lifetime and revived after his death

. . . or a new action be brought within the statutory period, as provided in the statute, but one recovery can be had"). Thus, we held that "if the injuries cause death, the recovery must be sought under Code § 8.01-50, the wrongful death statute." Lucas, 238 Va. at 449, 384 S.E.2d at 94. Nonetheless, we recognized that the plaintiff was not constrained to bring only a wrongful death action if causation was in doubt, and "[i]n choosing to file a personal injury action, [the plaintiff only] had to prove the elements of that claim to recover damages. Moreover, [the plaintiff] was entitled to the opportunity to prove those elements." Id. We held that had the plaintiff been permitted to introduce evidence in support of the survival claim, the trier of fact would have had to resolve conflicting testimony regarding the cause of the decedent's death. The error of the circuit court in Lucas was that the court essentially required an election by the plaintiff between the survival claim and a wrongful death claim before the contested causation issue was determined by the trier of fact. Id. at 449-50, 384 S.E.2d at 94.

Experience suggests, however, that Lucas was atypical in that the plaintiff initially chose to limit the theory of recovery to personal injury only and, therefore, it was the

26

plaintiff, not the defendant, who sought to contest the issue of causation as it related to the decedent's death when that issue arose. The present case is more typical in that the administrators sought to preserve the option to pursue either a survival action or a wrongful death action, and it is in such cases that the appropriate time when an election is required will most often arise. Implicit in the direction in Hendrix that such an election will occur "at an appropriate time after discovery has been completed" is the understanding that the plaintiff ought not be compelled to make the election without a full opportunity to develop its case.

Though there can be but one recovery in these cases, we are not unmindful of Centra Health's contention that in permitting a plaintiff to present evidence in support of a survival claim and a wrongful death claim when the issue of causation is disputed, a defendant may be subject to potential prejudice by the possibility that in a jury trial the jury could conflate the differing elements of damages from each claim in rendering a single verdict. We are of opinion, however, that a defendant can obviate this potential for prejudice by requesting that the trial be bifurcated into separate proceedings to determine liability and damages. Indeed, in a case where there is any doubt as to when compelling an election would be proper, bifurcation is the

27

most practical means to assure that each party receives a fair opportunity to present their case to the jury without prejudice to the other. Cf. Allstate Ins. Co. v. Wade, 265 Va. 383, 393, 579 S.E.2d 180, 185 (2003) ("bifurcation . . . is a matter for the trial court's discretion and requires consideration of whether any party would be prejudiced by granting or not granting such request, as well as the impact on judicial resources, expense, and unnecessary delay").

Viewed in light of the foregoing analysis, we find no merit in Centra Health's first assignment of error asserting that the circuit court erred in not requiring the administrators to elect between their personal injury survival claim and wrongful death claim. On this record, it is evident that Centra Health vigorously contested that Mullins had suffered any compensable injury for which a survival claim could be successfully maintained and also that any act of Centra Health's employees had caused Mullins' death. Contrary to Centra Health's contention, we did not hold in Hendrix that a plaintiff would always be required to elect between remedies prior to trial. Rather, the election is required only at a time when the record sufficiently establishes that the personal injuries and the death arose from the same cause. In this particular case, the circuit court correctly determined that compelling an election would put the administrators in

28

the untenable, and manifestly unjust, position of having to elect between two potentially viable claims, which Centra Health was contesting on separate and independent grounds. Under those circumstances, there was no "appropriate time" prior to trial at which compelling an election would not have prejudiced the administrators and, consequently, unfairly benefited Centra Health.  Accordingly, we hold that the circuit court did not err in denying Centra Health's motion to compel the administrators to elect between the survival and wrongful death claims.

We now consider Centra Health's contention, raised in its second assignment of error, that the circuit court erred in failing to strike the evidence as to the administrators' personal injury survival claim.[7]  Centra Health contends that to prevail on the personal injury survival claim, the administrators were required to present expert testimony that negligent acts of the hospital employees caused injury to Mullins that did not also result in his death.  Specifically, Centra Health maintains that Dr. Pambianco, the administrators' only expert witness qualified to address

---

[7] Centra Health's reference to the failure of the court to grant a "directed verdict" in this assignment of error is apparently meant to reference "summary judgment," as directed verdicts are not permitted in Virginia.  Code § 8.01-378; Kesler v. Allen, 233 Va. 130, 133, 353 S.E.2d 777, 779 (1987).

29

issues of causation, opined that Mullins' death ultimately resulted from the hospital employees' negligence. Thus, Centra Health further maintains that the administrators could not rely on Dr. Pambianco's testimony to support a claim that this negligence also caused injuries that did not result in Mullins' death and were compensable under the personal injury survival claim regardless of whether the jury ultimately found that Centra Health was not liable for Mullins' death. We disagree.

In considering the testimony of a witness, "the effect of the . . . testimony must be determined from a fair reading of it as a whole, and not merely by reference to isolated statements." Crawford v. Quarterman, 210 Va. 598, 603, 172 S.E.2d 739, 742 (1970); see also Tignor v. Virginia Electric & Power Co., 166 Va. 284, 290-91, 184 S.E. 234, 236 (1936). While it is true that Dr. Pambianco expressed the opinion that because the urinary tract infection was left untreated, Mullins' death was virtually inevitable, his testimony as a whole cannot be characterized as stating unequivocally that the only injury to Mullins resulting from the hospital staff's negligence was his death or that the multiplicity of injuries caused by the hospital staff's negligence all contributed to his death. Indeed, his testimony preceding the isolated statements upon which Centra Health relies contains a full

30

description of the injuries, pain, and suffering Mullins endured as a result of that negligence. Dr. Pambianco's testimony was clear that the negligence which resulted in these injuries was the poor Foley catheter care that permitted the urinary tract infection to develop, while it was the failure to detect the infection which, in Dr. Pambianco's opinion, led to Mullins' condition worsening to the point that death was inevitable.

Even when a portion of a party's evidence is potentially adverse to his case, that evidence must be weighed in the context of all the evidence presented by the party. Cf. Baines v. Parker, 217 Va. 100, 105, 225 S.E.2d 403, 407 (1976). And, especially when, as here, the party is seeking to prove alternative theories of his case, such conflicts in the evidence are best resolved by the jury. Cf. VEPCO v. Mabin, 203 Va. 490, 494, 125 S.E.2d 145, 148 (1962). In light of the fact that Centra Health continued to dispute the issue of causation with respect to the wrongful death claim, the jury would have been free to discount Dr. Pambianco's conclusion that the hospital staff's negligence in failing to detect and treat the urinary tract infection contributed to Mullins' death, while still accepting that portion of the testimony establishing that the negligence that permitted the infection to develop caused Mullins' personal injuries.

31

Accordingly, we hold that the circuit court did not err in overruling Centra Health's motion to strike the evidence as to the administrators' personal injury survival claim.

Finally, we turn to Centra Health's contention that the circuit court erred in failing to set aside the jury's verdict awarding $325,000 in damages on the personal injury survival claim on the ground that the award was excessive and not supported by the evidence. Centra Health contends that the jury must have misunderstood or misapplied the court's instructions with regard to the determination of damages for the survival claim and improperly considered evidence that was relevant only to the damages for wrongful death. In support of this contention, Centra Health posits that the award is excessive in light of the fact that the injury to be compensated was "a urinary tract infection which lasted eighteen days of Mr. Mullins['] life – most of which he spent in a comatose state."

In our discussion above, we recognized that when a personal representative is permitted to go forward with both a personal injury survival claim and a wrongful death claim, there is at least the potential that the jury could conflate the differing elements of damage in rendering the single verdict. In this case, however, we are not persuaded that the jury's verdict reflects any confusion as to the law or undue

sympathy based on the loss of solace evidence for the wrongful death claim that was not relevant to damages for the survival claim. "When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached," we will affirm the judgment notwithstanding the potential for a defect or imperfection in the process by which the judgment was obtained. Code § 8.01-678.

The record shows that the circuit court was painstaking in its efforts to instruct the jury both in how it was to determine the liability, if any, of Centra Health and then, based upon its determination, what quantum of damages could be assessed depending on whether that liability was for the wrongful death claim or for the survival claim. The law and its application were clearly detailed in the instructions, the court's further explanations, and in the verdict form. Though Centra Health might have requested a specific instruction expressly cautioning the jury to disregard evidence that was not relevant to the damages it might award, it did not do so, and in any case such an instruction would have added little to the court's clear differentiation of the two causes of action in the other instructions. A jury is presumed to follow the court's instructions, and an appellant who challenges a verdict bears the burden of rebutting that presumption. Stump

33

v. Doe, 250 Va. 57, 62, 458 S.E.2d 279, 282 (1995). In this case, there is no indication that the jury failed to follow the court's instructions and nothing express in the record to rebut the presumption that the jury did not do so.

Similarly, we do not agree with Centra Health's contention that the amount of the verdict is excessive in light of the nature of Mullins' injuries. Centra Health's characterization of the injury as merely being the urinary tract infection and its contention that the impact of that injury was somehow minimized by Mullins' diminished level of consciousness is without merit. The record amply supports the conclusion that as a result of the hospital staff's negligence, Mullins received substandard care that resulted not merely in his developing the urinary tract infection, but of all the consequential medical complications arising from the infection including, but not limited to, developing ileus, severe abdominal pain and distention, and delirium, as well as the cost of the second hospitalization.

In light of this evidence, and in consideration of the fact that the jury's verdict reflects a clear understanding that the administrators were entitled to recover only for the survival claim if Centra Health was found to be negligent, but not liable for Mullins' death, we hold that the award is adequately supported by the record. Accordingly, we further

34

hold that the circuit court did not err in refusing to set the verdict aside.

CONCLUSION

For these reasons, we will affirm the judgment of the circuit court confirming the jury's verdict in favor of the administrators awarding $325,000 in damages for the personal injuries suffered by Mullins.

<u>Affirmed</u>.