PRESENT:  Goodwyn, Mims, Powell, Kelsey, McCullough, Chafin, JJ., and Millette, S.J.

LEWIS DARNELL GREEN,
PERSONAL REPRESENTATIVE/EXECUTOR OF THE ESTATE
OF ONEIDA STILTNER GREEN, DECEASED

OPINION BY
v.  Record No. 190181                      JUSTICE S. BERNARD GOODWYN
June 4, 2020
DIAGNOSTIC IMAGING ASSOCIATES, P.C., ET AL.

FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
Richard C. Patterson, Judge

In this appeal, we consider whether the circuit court erred in dismissing a suit for

wrongful death against Virginia medical providers on the basis that the plaintiff had received a

personal injury settlement against Kentucky medical providers concerning the same injury.

I.  BACKGROUND

Lewis Darnell Green (Green), the husband of Oneida Stiltner Green (the decedent), is the

personal representative and executor of the decedent's estate.  Green filed wrongful death and

personal injury actions in a Virginia circuit court and a Kentucky circuit court, alleging that the

decedent died as the result of medical professionals in both states failing to identify and treat the

decedent's "mesenteric ischemia when her ischemic bowel was salvageable."

A.  Medical Treatment in Virginia

On May 24, 2013, the decedent was admitted to Clinch Valley Medical Center in

Virginia because she was experiencing nausea, vomiting, and abdominal pain.[1]  Dr. Waheed

Bhatti (Dr. Bhatti), an agent or employee of Clinch Valley Medical Center, admitted the

---

[1] Because courts take facts alleged in a complaint as true in ruling on a motion to dismiss, the facts here are those alleged in the amended complaint.  *See Bragg v. Board of Supervisors*, 295 Va. 416, 423 (2018).

1

decedent into the center, noting a history of stones in her pancreatic duct and chronic pancreatitis.

The decedent had an abdominal CT scan on May 26, 2013, to look "'for necrotic pancreas.'" Dr. Qasim Rao (Dr. Rao), an agent or employee of Diagnostic Imaging Associates, P.C. (Diagnostic Imaging), read the CT scan results. Dr. Rao noted "pancreatic atrophy with dilation of the main pancreatic duct, calcifications within the proximal duct, no inflammation to suggest pancreatitis and no evidence of bowel obstruction."

That same day, Dr. Bhatti and Dr. Ariel Enrique Rodriguez Pimentel (Dr. Pimentel), an agent or employee of Clinch Valley Advanced Laparoscopic Surgery (Clinch Valley Surgery), examined the decedent and reviewed her CT scan results. The decedent was discharged from Clinch Valley Medical Center on May 28, 2013.

### B. Medical Treatment in Kentucky

The decedent continued to experience nausea, vomiting, and abdominal pain, and on May 29, 2013, she was admitted to Pikeville Medical Center in Kentucky, but she was discharged the next day.

The decedent experienced severe abdominal pain and returned to Pikeville Medical Center on June 4, 2013. That same day, she was transferred and admitted to the University of Kentucky Medical Center. The decedent was "diagnosed with ischemic bowel due to the occlusion of her" superior mesenteric artery. Surgeons at the University of Kentucky Medical Center "remove[d] extensive amounts of [the decedent's] bowel that had become necrotic. They also performed a bypass of her [superior mesenteric artery] which successfully revascularized her remaining bowel."

2

In the following two months, the decedent had "multiple other surgeries for her ischemic bowel, leaking anastomosis, abdominal washouts and fistula formation" at the University of Kentucky Medical Center. During this timeframe, the decedent also experienced "complications with sepsis, pneumonia, and renal failure." The decedent received a tracheotomy and a feeding tube was put in place.

## C. Additional Medical Treatment

On August 8, 2013, the decedent was transferred to a nursing home, but on August 10, she returned to the University of Kentucky Medical Center. She again was transferred to a nursing home on August 14. On August 23, due to abdominal pain and vomiting, she was admitted to Johnston Memorial Hospital in Virginia.

The decedent was admitted to Johnson City Memorial Hospital in Tennessee on August 25. The decedent died on August 29 "as a result of complications directly related and attributable to the extensive bowel resection she underwent on June 4, 2013."

## D. Procedural History in Kentucky Case

On August 25, 2014, Green sued Pikeville Radiology, PLLC (Pikeville Radiology), a doctor employed by Pikeville Radiology, and Pikeville Medical Center (collectively the Kentucky Defendants) in a Kentucky circuit court. Green alleged claims for the decedent's personal injury and wrongful death, and sought damages for her pain and suffering, medical expenses, loss of wages, and Green's loss of consortium. The complaint, in part, alleged that the Kentucky Defendants were negligent and "deviated from the appropriate standards of care," and that their failure to identify and treat the decedent's mesenteric ischemia "when her ischemic bowel was salvageable, was a proximate cause of her death." The complaint alleged that Pikeville Medical Center deviated from the appropriate standard of care as follows:

a. they failed to identify an occluded superior mesenteric artery and resulting bowel ischemia as a potential cause of Oneida Green's symptoms;

b. they failed to rule out an occluded superior mesenteric artery and resulting bowel ischemia as a cause of Oneida Green's symptoms;

c. they failed to treat Oneida Green for an occluded superior mesenteric artery and resulting bowel ischemia, and/or failed to have her transferred to another facility for treatment; they failed to conduct a proper differential diagnosis with regard to Oneida Green's symptoms;

d. they otherwise failed to comply with the applicable standards of care under the circumstances then and there existing.

On February 28, 2017, the Kentucky circuit court entered an order granting Green's motion to dismiss the wrongful death and loss of consortium claims against the Kentucky Defendants. On June 27, 2017, the circuit court entered an order reflecting Green's agreement to dismiss all claims against Pikeville Radiology and the doctor employed by Pikeville Radiology, leaving Pikeville Medical Center as the sole defendant in Kentucky.

Green settled with Pikeville Medical Center for an undisclosed amount and, on July 3, 2017, the Kentucky circuit court entered an order of dismissal that recognized the settlement and dismissed all claims against Pikeville Medical Center with prejudice.

E. Procedural History in Virginia Case

On August 24, 2015, Green sued Diagnostic Imaging, Dr. Rao, Dr. Bhatti, Clinch Valley Medical Center, Dr. Pimentel, and Clinch Valley Surgery in the Circuit Court of Tazewell County, alleging wrongful death under Code § 8.01-50 and a survival action for personal injury under Code § 8.01-25.

On August 11, 2016, Clinch Valley Medical Center filed a plea in bar, contending that the survival action was barred by the statute of limitations. Clinch Valley Surgery and Dr.

4

Pimentel filed a plea in bar on August 12, 2016, which incorporated by reference Clinch Valley Medical Center's plea in bar.

On December 15, 2016, the circuit court granted Green's motion to nonsuit the case, without prejudice, regarding Clinch Valley Medical Center.

On April 3, 2018, the circuit court granted Green's request for leave to amend the complaint, and Green filed an amended complaint on that same day. The amended complaint does not include Clinch Valley Medical Center as a defendant or assert the survival action for personal injury. The amended complaint solely asserts a wrongful death action under Code § 8.01-50, alleging that Dr. Bhatti, Clinch Valley Surgery, Dr. Pimentel, Diagnostic Imaging, and Dr. Rao (collectively the Virginia Defendants) were negligent and that their "failure to identify and treat [the decedent's] mesenteric ischemia when her ischemic bowel was salvageable was a proximate cause of her death." The amended complaint, in part, alleges that the Virginia Defendants diverged from the necessary standard of care as follows:

    a.   they failed to identify ischemic bowel that was clearly present on the CT scan taken on May 26;

    b.   they failed to identify a clearly occluded superior mesenteric artery present on the CT scan taken on May 26;

    c.   they failed to identify an occluded superior mesenteric artery and resulting bowel ischemia as a potential cause of Mrs. Green's symptoms;

    d.   they failed to rule out an occluded superior mesenteric artery and resulting bowel ischemia as a cause of Mrs. Green's symptoms;

    e.   they failed to treat Mrs. Green for an occluded superior mesenteric artery and resulting bowel ischemia,

    f.   they failed to have her transferred to another facility for treatment;

    g.   they failed to conduct a proper differential diagnosis with regard to Mrs. Green's symptoms; and/or

h. they failed to comply with the applicable standards of care under the circumstances then and there existing.

In late April 2018, the Virginia Defendants filed separate motions to dismiss. The Virginia Defendants later filed a joint memorandum of law in support of their motions to dismiss. They argued that Green's lawsuits in Kentucky and Virginia asserted the same injuries—"that the Virginia and Kentucky defendants failed to identify and treat the Decedent's mesenteric ischemia when her ischemic bowel was salvageable, which is alleged to be a proximate cause of her death." The Virginia Defendants contended that Code § 8.01-56 barred Green's wrongful death action in Virginia because Green had already elected his remedy when he recovered for personal injury to the decedent in Kentucky. Additionally, the Virginia Defendants argued that the prohibition against claim-splitting and double recovery barred Green from "split[ting] his single cause of action into two separate claims and recover[ing] under both," and that the wrongful death action was also barred by judicial estoppel.

Following a hearing, the circuit court granted the Virginia Defendants' motions to dismiss on November 15, 2018, and dismissed the amended complaint with prejudice. In its letter opinion, dated September 20, 2018, the circuit court concluded that Code § 8.01-56 barred Green's wrongful death action in Virginia.

The circuit court stated that Code § 8.01-56 requires plaintiffs in Virginia "to make an election as to whether they want to recover for personal injury or wrongful death," and that Code § 8.01-56 makes it clear that Virginia law only allows for "one recovery for the same injury." Noting that the law in Kentucky does not require a plaintiff to make such an election, the circuit court opined that not requiring a plaintiff to make an election, as required by Code § 8.01-56, would be seen as resulting in a "double recovery" or "case splitting" under Virginia law. It concluded that Green's "Kentucky settlement for personal injury equates to the election required

6

by" Code § 8.01-56. The circuit court stated that under a plain reading of Code § 8.01-56, "the mere acceptance of the recovery in Kentucky for the same injury does foreclose any later acceptance of a recovery in Virginia for the same injury." Thus, Green could not pursue a wrongful death action in Virginia for the same injury. Lastly, the circuit court also concluded that judicial estoppel applied as a bar to Green's wrongful death claim. Therefore, it granted the Virginia Defendants' motions to dismiss.

Green appeals to this Court. We granted four assignments of error:

1. The circuit court erred in granting the Defendants' [m]otion to [d]ismiss.

2. The circuit court erred in finding that Plaintiff's claim was barred by Virginia Code § 8.01-56.

3. The circuit court erred in finding that the Plaintiff's settlement of the Kentucky case equated to an election of remedy under Virginia law.

4. The circuit court erred in finding that Plaintiff's claim was barred by judicial estoppel.

## II. ANALYSIS

In reviewing a circuit court's decision to grant a motion to dismiss, if no evidence has been taken, "we treat the factual allegations in the [complaint] as we do on review of a demurrer." *Bragg v. Board of Supervisors*, 295 Va. 416, 423 (2018) (citation and internal quotation marks omitted). Accordingly, "[w]e accept the truth of all material facts that are . . . expressly alleged, impliedly alleged, and those that may be fairly and justly inferred from the facts alleged." *Id.* (citation and internal quotation marks omitted). We "review the circuit court's decision to dismiss the [complaint]" as well as any "issues of statutory interpretation, de novo." *Id.*

On appeal, Green argues that the circuit court erred in granting the Virginia Defendants' motions to dismiss, in part, because it incorrectly interpreted and applied Code § 8.01-56. Green

7

argues that his settlement for personal injury and abandonment of the wrongful death claim in Kentucky did not elect Green's remedy and bar him from pursuing a wrongful death claim in Virginia.

In interpreting a statute, we seek "to effectuate the intent of the legislature as expressed by the plain meaning of the words used in the statute." *Llewellyn v. White*, 297 Va. 588, 595 (2019). Accordingly, we "appl[y] the plain language unless the words are ambiguous or such application would render the law internally inconsistent or incapable of operation." *Id.*

Code § 8.01-56 provides as follows:

> when a person who has brought an action for personal injury dies pending the action, such action may be revived in the name of his personal representative. If death resulted from the injury for which the action was originally brought, a motion for judgment and other pleadings shall be amended so as to conform to an action under § 8.01-50, and the case proceeded with as if the action had been brought under such section. In such cases, however, there shall be but one recovery for the same injury.[2]

In the instant case, the circuit court characterized Code § 8.01-56 as an election of remedy statute and reasoned that the settlement, in Kentucky, of the decedent's personal injury claim, equated to an election of remedy pursuant to Code § 8.01-56. We disagree.

Code § 8.01-56 plainly states that if the injured individual's death resulted from the injury, the action for that injury must be pursued in a wrongful death suit under Code § 8.01-50. In Virginia, a personal representative does not have the option of maintaining a personal injury

---

[2] Code § 8.01-50 governs how and when to bring a wrongful death action:
A. Whenever the death of a person shall be caused by the wrongful act, neglect, or default of any person . . . and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action . . . to recover damages . . . then, and in every such case, the person who . . . would have been liable, if death had not ensued, shall be liable to an action for damages . . . notwithstanding the death of the person injured . . . .

8

action for a decedent's injury if that injury resulted in the decedent's death. *See* Code §§ 8.01-25 and -56.[3]

> Pursuant to Code § 8.01-25, although a cause of action survives
>
> the death of the person in whose favor the cause of action existed . . . if the cause of action asserted by the decedent in his lifetime was for a personal injury and such decedent dies as a result of the injury complained of . . . the action shall be amended in accordance with the provisions of § 8.01-56.

Thus, if the injury complained of caused the death, "the pleadings are required to be amended, and the case proceeded with as if brought under the death by wrongful act statutes." *Seymour v. Richardson*, 194 Va. 709, 712 (1953) (interpreting a predecessor statute to Code § 8.01-56).

Code § 8.01-56 is not an election of remedy statute. Under the plain language of Code §§ 8.01-25 and -56, determining which action to bring is not a matter of choice, but rather it is dictated by the facts regarding causation of an injured person's death.

A plaintiff does not necessarily have to decide before trial whether the facts support a personal injury action or a wrongful death action. *Centra Health, Inc. v. Mullins*, 277 Va. 59, 78-79 (2009). A plaintiff may bring a personal injury action and assert a wrongful death action in the alternative, if the plaintiff is unsure of his ability to prove that the decedent's death resulted from the decedent's injury. *See Antisdel v. Ashby*, 279 Va. 42, 49 (2010). However, once the facts adduced at trial sufficiently establish whether "the personal injuries and the death arose from the same cause," a plaintiff, in Virginia, can only recover on the claim that is supported by the record. *Centra Health, Inc.*, 277 Va. at 79. The facts dictate whether a plaintiff

---

[3] In Kentucky, however, a person may "recover in the same action for both the wrongful death of the decedent and for the personal injuries from which the decedent suffered prior to death," even when such injuries contributed to the death. Ky. Rev. Stat. Ann. § 411.133.

can recover under the wrongful death statute, Code § 8.01-50, or whether the plaintiff can recover for the decedent's personal injury under Code § 8.01-25.

Accordingly, in the instant case, Green's ability to recover in Virginia for the personal injury or wrongful death of the decedent was not an "election" Green was required to make under Code § 8.01-56. Because Green alleged in the amended complaint that the decedent died as a result of the injury she suffered at the hands of negligent defendants, in Virginia, his claim could only proceed as a wrongful death action pursuant to Code § 8.01-50. There is no language in Code § 8.01-56 that would prohibit the filing of a wrongful death action in Virginia because of the settlement of a personal injury claim in another state. Further, Kentucky law allows the filing of a personal injury claim in addition to a wrongful death claim for the same injury. *See* Ky. Rev. Stat. Ann. § 411.133. Thus, as a matter of law the settlement of the Kentucky personal injury claim did not operate as an election of remedies by Green in the Kentucky case. For these reasons, we conclude that the circuit court erred in granting the motions to dismiss on the grounds that Green elected a remedy when he settled the Kentucky personal injury action, and that Green's wrongful death action is barred by Code § 8.01-56.

The circuit court also mentioned claim-splitting, double recovery, and judicial estoppel as possible bases for its ruling on the motions to dismiss. We conclude that none of those doctrines supports the circuit court's granting of the motions to dismiss.

Green argues that the circuit court erred in concluding that allowing Green's wrongful death action in Virginia would amount to claim-splitting. Green contends that the claim-splitting rule does not apply here because the claims brought in Kentucky and Virginia are against different defendants. We agree.

10

"'Claim-splitting' is bringing successive suits on the same cause of action where each suit addresses only a part of the claim." *Bill Greever Corp. v. Tazewell Nat'l Bank*, 256 Va. 250, 254 (1998). Claim-splitting is prohibited "based on public policy considerations similar to those underlying the doctrine of *res judicata*: avoiding a multiplicity of suits, protecting against vexatious litigation, and avoiding the costs and expenses associated with numerous suits on the same cause of action." *Id.* "The rule against claim-splitting exists to protect *a defendant* from vexatious and costly litigation resulting from a multiplicity of suits on the same cause of action." *Flora, Flora & Montague, Inc. v. Saunders*, 235 Va. 306, 311 (1988) (emphasis added). As we have recognized, "[n]o one ought to be twice vexed for one and the same cause." *Id.* (citation and internal quotation marks omitted).

In the instant case, the rule against claim-splitting does not apply because Green is not bringing successive suits against the same defendants. Rather, Green filed separate suits against the Kentucky Defendants and the Virginia Defendants.

Additionally, the parties do not dispute that the Kentucky Defendants and the Virginia Defendants are joint tortfeasors, and under Virginia law, "[a] judgment against one of several joint wrongdoers shall not bar the prosecution of an action against any or all the others, but the injured party may bring separate actions against the wrongdoers and proceed to judgment in each . . . ." Code § 8.01-443.

Thus, because Green has not brought multiple suits on the same cause of action against the same defendants, Green's amended complaint did not amount to claim-splitting and the circuit court erred in dismissing Green's action on this ground.

11

The Virginia Defendants argue that allowing Green to receive a second recovery in Virginia for the same injury involved in the Kentucky settlement constitutes an impermissible double recovery.

"A fundamental principle of damages is that a plaintiff may not receive double recovery for a single injury." *Dominion Res., Inc. v. Alstom Power, Inc.*, 297 Va. 262, 270 (2019). This principle is echoed by the language in Code § 8.01-56, which states that "there shall be but one recovery for the same injury."

Here, the circuit court dismissed Green's amended complaint on the grounds that allowing his wrongful death claim to proceed to trial could result in double recovery. Although we recognize that Green admittedly seeks recovery in Virginia for the "same injury" involved in his Kentucky settlement, Code § 8.01-56 and other statutory and common law principles prohibiting double recovery do not bar Green's Virginia action from moving forward.

Under the common law principle against double recovery, a party may seek compensation in two valid causes of action, but he is "estopped from collecting the full amount [of damages] in the second action if they were partially paid therefor in the first." *Nizan v. Wells Fargo Bank Minn. Nat'l Ass'n*, 274 Va. 481, 491 (2007) (citation and internal quotation marks omitted); *see also Dominion Res., Inc.*, 297 Va. at 269 (noting that "the settlement amount is deducted from the amount the remaining tortfeasors owe"). Likewise, Code § 8.01-35.1(A)(1) may be asserted to prevent a double recovery in certain circumstances.[4] The preclusion upon

---

[4] Code § 8.01-35.1(A)(1) entitles a defendant "to a reduction of the judgment entered against him by the amount the plaintiff receives in settlement from another who is also responsible for the identical wrong, harm, or damage as the defendant." *Llewellyn*, 297 Va. at 596; *see* Code § 8.01-35.1(A)(1).

collection of the full amount of damages twice is rooted in "basic principles of fairness and justice." *Nizan*, 274 Va. at 491 (citation and internal quotation marks omitted).

Green contends that he would not receive a double recovery because the circuit court could reduce any judgment he receives in Virginia by amounts already compensated in the Kentucky settlement, to the extent any part of that settlement may be found to constitute a double recovery. We agree. An allegation of a potential double recovery was not a sufficient basis for dismissing Green's action; any alleged double recovery can be addressed by the circuit court. Therefore, the circuit court erred when it dismissed the amended complaint on the grounds that allowing Green's wrongful death action in Virginia to proceed would allow a double recovery.

Green argues that judicial estoppel does not apply because the parties in Kentucky and Virginia are different, and there is "nothing inconsistent about the manner in which the Kentucky case was resolved and the pursuit of a wrongful death claim here." Clinch Valley Surgery concedes that judicial estoppel does not apply.[5] We agree.

"[J]udicial estoppel forbids parties from assuming successive positions in the course of a suit, or series of suits, in reference to the same fact or state of facts, which are inconsistent with each other, or mutually contradictory." *Bentley Funding Grp., L.L.C. v. SK & R Grp., L.L.C.*, 269 Va. 315, 325 (2005) (citation and internal quotation marks omitted). In Virginia, the doctrine of judicial estoppel only applies "when the parties to the disparate proceedings are the same." *Id.* at 326.

Here, it is clear that the parties in Kentucky and Virginia are different, and there is nothing inconsistent concerning how the Kentucky case was resolved and Green's pursuit of the

---

[5] Diagnostic Imaging did not address judicial estoppel in its brief.

wrongful death action against different defendants here in Virginia.  Therefore, the circuit court erred in dismissing the amended complaint based upon judicial estoppel.

### III. CONCLUSION

For the reasons stated, we hold that the circuit court erred in granting the motions to dismiss.  The judgment of the circuit court will be reversed and this action remanded to the circuit court for further proceedings.

*Reversed and remanded.*