COURT OF APPEALS OF VIRGINIA

Present:  Judges Malveaux, Ortiz and Friedman
Argued at Norfolk, Virginia

UNPUBLISHED

MID-ATLANTIC WOMEN'S CARE, P.L.C.

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1319-22-1                      JUDGE FRANK K. FRIEDMAN
                                                    OCTOBER 31, 2023
GLORIA KONTARATOS


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Jerrauld C. Jones, Judge

Nicholas J.N. Stamatis (Michael E. Olszewski; Michael B. Sylvester;
Rodney S. Dillman; Brett M. Saunders; Hancock, Daniel & Johnson,
P.C., on briefs), for appellant.

Randy D. Singer (Rosalyn K. Singer; Kevin A. Hoffman; Singer
Davis, LLC, on brief), for appellee.


Mid-Atlantic Women's Care, P.L.C. appeals the circuit court's judgment following a jury

trial, awarding Gloria Kontaratos $2,125,000 in a medical malpractice action. On appeal,

Mid-Atlantic argues the circuit court erred in denying its motions for a mistrial and for a new trial,

based on the prejudice caused due to the "unavoidable absence" of one of the treating physicians,

Dr. Colleen Connor, during part of the jury trial. Mid-Atlantic also contends that the circuit court

erred in failing to provide the jury with a cautionary instruction regarding Dr. Connor's absence.

We find no error and affirm the decision of the circuit court.

BACKGROUND

In March 2019, Dr. Connor, an employee of Mid-Atlantic, performed a total abdominal

hysterectomy on Kontaratos, with assistance from Dr. Seifeldin Sadek, a medical resident. At

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

approximately 11:00 a.m. on the day following surgery, Kontaratos reported pain, numbness, and tingling in her lower extremities. Kontaratos underwent a veinous study that afternoon that revealed no blood clots but showed that Kontaratos had no arterial blood flow to her lower extremities. After Dr. Sadek received the results of the veinous study, he ordered an arterial scan but did not have the authority to request a vascular consult without first consulting with the attending physician. Dr. Sadek relayed Kontaratos' symptoms to Dr. Connor, who did not visit Kontaratos or order additional testing before she left the hospital for the evening.

Kontaratos' symptoms continued to worsen throughout the day, and Kontaratos' nurse found no pulse in her lower extremities. The nurse contacted Mid-Atlantic's on-call physician, Dr. Frank Morgan, who decided to wait for a pending arterial scan before requesting a vascular consult. At this point, six hours had passed since the initial onset of Kontaratos' symptoms. Kontaratos' arterial scan confirmed that she had no pulses flowing to her lower extremities, at which time Dr. Morgan ordered a vascular consult, at approximately 7:55 p.m. A vascular surgeon evaluated Kontaratos that evening and determined that she had acute limb ischemia and needed immediate surgery. During the surgery, the vascular surgeon found the ischemia to be significant and found clots in multiple blood vessels. The vascular surgeon made several incisions on both of Kontaratos' legs, attempting to remove the clots, and then followed with fasciotomies in both legs. Following this procedure, Kontaratos had an "exceedingly painful and difficult" recovery. Kontaratos later required many additional surgeries and amputations of toes and part of her foot.

In September 2020, Kontaratos filed a complaint alleging medical malpractice against Dr. Connor and Dr. Frank Morgan, as well as their employer, Mid-Atlantic, based on a theory of respondeat superior for the care Kontaratos received after complaints of severe leg pain and numbness that arose following her total abdominal hysterectomy.[1] The parties convened for a

---

[1] Kontaratos also named other defendants but dismissed them before trial.

jury trial on April 25, 2022. Dr. Connor attended the first two days of trial, during which the parties completed jury selection, presented opening arguments, and heard testimony from three of Kontaratos' witnesses. On the third day of trial, however, Mid-Atlantic informed the circuit court that Dr. Connor was ill and unable to attend the trial. Mid-Atlantic asked the circuit court to instruct the jury that "Dr. Connor had an important matter to attend to" and that the circuit court had "excused Dr. Connor from trial" on the first day. The circuit court advised the jury that Dr. Connor had "a very important personal matter and the [circuit court had] authorized her absence from today's proceedings." The circuit court advised the jury that they were "not to make any assumptions or draw any inferences due to her absence." The trial proceeded following this instruction.

The following day, Mid-Atlantic informed the circuit court that Dr. Connor had "taken a turn for the worse." Mid-Atlantic argued that "given what has developed with Dr. Connor's health situation," the earlier instruction was "no longer a sufficient explanation to the jury because it invites too much speculation on their part and possible prejudice against Dr. Connor." Mid-Atlantic asked the circuit court to instruct the jury that "the important personal matter Dr. Connor had to attend to yesterday was her own health because she was sick," that "her illness ha[d] gotten worse and her intention [wa]s to go to the hospital," and, for that reason, the circuit court excused Dr. Connor from attending trial. After hearing arguments from the parties regarding the instruction, the circuit court informed the jurors that "Dr. Connor had been excused from court due to an important matter" and that "Dr. Connor became ill with an undiagnosed illness. Dr. Connor is still ill today and in fact is seeking medical treatment." The circuit court instructed the jury to "not make any assumptions or draw any inferences due to her absence." The circuit court proceeded with trial, and the jury heard testimony from several more witnesses.

Later that day, Mid-Atlantic informed the circuit court that Dr. Connor was being admitted to the hospital for "[a]scites, severe bowel inflammation," and was awaiting a surgical consultation. Based on this, Mid-Atlantic moved for a mistrial. Mid-Atlantic argued that Dr. Connor deserved the opportunity to participate in her case, but was being denied that opportunity through no fault of her own. Mid-Atlantic's counsel stated that he had had "no meaningful discussion" about trial strategy with Dr. Connor since she became ill. The circuit court discussed less drastic ways to address the issue, such as suspending the trial "for a reasonable time to allow her to recover" and therefore "minimiz[ing] the harm" to the parties. The circuit court ultimately took Mid-Atlantic's motion under advisement, but asked for more information on Dr. Connor's condition.

The next day, the fifth day of trial, Mid-Atlantic made a new motion for a mistrial. Mid-Atlantic informed the circuit court that Dr. Connor was receiving medical treatment, but she still did not have a specific diagnosis. In support of the motion for mistrial, Mid-Atlantic argued "[t]here [wa]s no substitute for Dr. Connor as the main named defendant for being in th[e] courtroom." Kontaratos advised the circuit court that she was considering nonsuiting both individual defendants, Dr. Connor and Dr. Morgan, depending on Dr. Connor's progress. The circuit court again took the motion for mistrial under advisement until it could learn more about Dr. Connor's "ability to participate by way of presence and/or presentation of evidence in the case." Before testimony continued, the circuit court informed the jury that Dr. Connor was still ill and receiving medical treatment. The circuit court instructed the jury to "not make any assumptions or draw any inferences due to her absence" and that the circuit court approved her absence.

Kontaratos filed a motion that Dr. Connor be required to produce, under seal, a complete copy of her hospital records from her admission. Dr. Connor was released from the hospital on Sunday, May 1, 2022.

The following day, on the sixth day of trial, Mid-Atlantic moved for a mistrial on behalf of itself, Dr. Connor, and Dr. Morgan. Mid-Atlantic argued the circuit court had "broad discretion to determine whether declaring a mistrial was necessary to prevent great injustice to either party." Mid-Atlantic provided the circuit court with selected "screenshots from Dr. Connor's medical records from her hospital admission." Mid-Atlantic asserted that through her absence and illness, Dr. Connor missed the ability to observe the testimony of the expert witnesses and had been unable to review any transcripts from the testimony due to her hospitalization. Mid-Atlantic argued that Dr. Connor suffered prejudice due to her illness, as she was unable to participate in her trial, warranting mistrial.

In response, Kontaratos moved to nonsuit Dr. Connor and Dr. Morgan, which the circuit court granted. Kontaratos argued that the motion for a mistrial was "moot" because Dr. Connor was no longer a party to the suit, arguing "[t]hat motion for a mistrial is no longer pending in front of the court and rightfully so, because there can be no verdict entered against her." The circuit court made no ruling on the motion for mistrial, and the trial continued. Before testimony started, the circuit court instructed the jury that Dr. Connor was "still ill today and is receiving medical treatment" and that the jury "should not make any assumptions or draw any inferences due to her absence."

The following day, Mid-Atlantic provided the circuit court with a note from a registered nurse with a "return to work" date for Dr. Connor of May 5, 2022. Mid-Atlantic also asked the circuit court to rule on the pending motion for mistrial. The circuit court considered the argument of the parties. The court stated that it had carefully reviewed all the authorities provided by the

parties, had considered their arguments, had done its own research, and was "very, very cautious in making the decision." The circuit court denied Mid-Atlantic's motion for a mistrial.

Mid-Atlantic requested the circuit court offer a curative instruction to the jury to explain Dr. Connor's absence due to her illness and hospitalization. Kontaratos objected to the instruction, arguing that it would bias the jury towards Dr. Connor. The circuit court called the jury into the courtroom and informed it that Dr. Connor had been diagnosed with gastroenteritis and had been hospitalized from April 28, 2022, until May 1, 2022. The circuit court informed the jury that Dr. Connor would testify the next day. The circuit court reiterated that "Dr. Connor was not present in trial due to her illness and hospitalization" and that the jury "should not make any assumptions or draw any inference due to her absence. Her unforeseen absence was excused." The circuit court also informed the jury that Kontaratos voluntarily dismissed Dr. Connor and Dr. Morgan and that the trial would proceed against Mid-Atlantic.

The trial resumed the following day, during which Dr. Connor was in attendance and testified, after which the defense rested. Relevant to this appeal, Dr. Connor testified about her illness and that she had been hospitalized for three days during the trial.

At the close of the evidence and after deliberations, the jury returned a verdict in Kontaratos' favor in the amount of $3,100,000.[2] Following the trial, Mid-Atlantic filed a motion to set aside the jury's verdict, which the circuit court denied. Mid-Atlantic appeals.

### ANALYSIS

On appeal, Mid-Atlantic challenges the circuit court's denial of its motion for a mistrial. Mid-Atlantic asserts that Dr. Connor's absence from the trial caused prejudice because, during testimony, "she was accused of being improperly absent during medical care." Mid-Atlantic

---

[2] Upon Mid-Atlantic's motion, the circuit court reduced Kontaratos' damages to $2,125,000, based on the statutory limit and a separate settlement between Kontaratos and another defendant. Code § 8.01-581.15.

- 6 -

reasoned that the jury could have taken her absence at trial as being "similar to the actions that lie at the heart of the litigation," creating a "manifest probability of prejudice . . . necessitating a mistrial." Mid-Atlantic also challenges the circuit court's refusal to inform the jury about Dr. Connor's hospitalization and the medical procedures she underwent until the eighth day of trial, one day before the defense rested.

## I. Motion for Mistrial

The circuit court's "ruling denying a motion for mistrial will be set aside on appellate review only if the ruling constituted an abuse of discretion." *Gross v. Stuart*, 297 Va. 769, 774 (2019) (quoting *Allied Concrete Co. v. Lester*, 285 Va. 295, 308 (2013)). "A reviewing court can conclude that 'an abuse of discretion has occurred' only in cases in which 'reasonable jurists could not differ' about the correct result." *Bethea v. Commonwealth*, 68 Va. App. 487, 506-07 (2018) (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)). "'[B]y definition,' however, a trial court 'abuses its discretion when it makes an error of law.'" *Id.* at 507 (alteration in original) (quoting *Coffman v. Commonwealth*, 67 Va. App. 163, 166 (2017)). "To properly review the trial court's application of the law to the facts, '[w]e give deference to the trial court's factual findings and view the facts in the light most favorable to . . . the prevailing part[y] below.'" *Stone v. Commonwealth*, 297 Va. 100, 102 (2019) (alterations in original) (quoting *Kim v. Commonwealth*, 293 Va. 304, 311 (2017)).

"When a motion for mistrial is made, based upon an allegedly prejudicial event, the trial court must make an initial factual determination, in . . . light of all the circumstances of the case, whether the defendant's rights are so 'indelibly prejudiced' as to necessitate a new trial." *Green v. Commonwealth*, 266 Va. 81, 102 (2003) (quoting *Spencer v. Commonwealth*, 240 Va. 78, 95 (1990)). "The trial court must also find a probability of prejudice, with the 'burden of establishing that probability . . . upon the party moving for a mistrial.'" *Green v.*

*Commonwealth*, 26 Va. App. 394, 401 (1998) (alteration in original) (quoting *Robertson v. Metro. Wash. Airport Auth.*, 249 Va. 72, 76 (1995)). "Hence, we will not overturn 'the denial of a motion for a mistrial . . . unless there exists a manifest probability that [the ruling] was prejudicial.'" *Id.* (alterations in original) (quoting *Taylor v. Commonwealth*, 25 Va. App. 12, 17 (1997)).

Mid-Atlantic argues that this case presents a "unique scenario" under which the circuit court should have granted a mistrial. Specifically, Mid-Atlantic argues that "an incurable prejudice arises when a litigant is seen by the jury, through no fault of its own, doing exactly what the litigant has been accused of doing."[3] Mid-Atlantic compares the facts of this case to *Miller v. Commonwealth*, 7 Va. App. 367, 371 (1988), in which the trial court denied a motion for a mistrial after a criminal defendant, who was accused of a non-violent crime, was brought into the courtroom in front of the jury wearing shackles. This Court reversed the denial of the defendant's motion for a mistrial, holding that the defendant was "effectively denied that presumption of innocence by being unnecessarily shackled and viewed by the jury." *Id.* Mid-Atlantic argued that it suffered a "manifest probability of prejudice" because Dr. Connor was unable to attend the trial through no fault of her own, and therefore "was forced to appear exactly as . . . Kontaratos claimed she was during her medical care—absent."[4]

---

[3] In *Jack v. Booth*, 858 N.W.2d 711 (Iowa 2015), a health care provider defendant leapt into action to provide aid to a juror who fainted during the trial. The trial court denied the plaintiff's subsequent motion for a mistrial. A defense verdict ensued. On appeal, the Iowa Supreme Court reversed, finding a mistrial should have been granted. Mid-Atlantic argues that just as a mistrial was appropriate in *Jack*, because trial events painted the doctor in an overly flattering light, here Dr. Connor's absence necessitated a mistrial because it cast her in an unflattering light. The jury here, however, was told of Dr. Connor's illness, instructed not to draw any inferences from her absence, and, ultimately, the doctor was permitted to testify about her illness. We find *Jack* a very different situation than the setting here.

[4] Notably, Mid-Atlantic argued repeatedly below that a mistrial was warranted because Dr. Connor was unavailable to assist in the defense of the case or contribute to challenging plaintiff's experts. On appeal, Mid-Atlantic suggests that Dr. Connor's absence added fuel to

Mid-Atlantic's argument ignores the impact of the circuit court's repeated instructions to the jury not to "make any assumptions or draw any inference due to [Dr. Connor's] absence." "A jury is presumed to follow the court's instructions, and an appellant who challenges a verdict bears the burden of rebutting that presumption." *Centra Health, Inc. v. Mullins*, 277 Va. 59, 81 (2009). In this case, there is no indication that the jury failed to follow the circuit court's instructions and Mid-Atlantic offers no evidence to rebut the presumption. Moreover, the repeated instructions were generally given at Mid-Atlantic's request, despite Kontaratos' expressed frustration that the instructions could cause the jury to look upon Dr. Connor with sympathy.

Mid-Atlantic also suggests that "the circuit court erred by giving weight to factors that were not proper for its decision" with respect to the mistrial motion. Mid-Atlantic takes issue with the circuit court's statements that "it believed it needed to balance interests regarding what would be fair to both sides in how it addressed this situation," specifically, Kontaratos' counsel's claim that he had advanced, and would lose, $100,000 in costs for preparation for trial. Mid-Atlantic alleges "mistrial analysis does not involve balancing prejudices" and should not be "guided by the opposing party's advanced litigation costs."[5]

We agree with Mid-Atlantic that the proper consideration for deciding a motion for a mistrial is whether "the defendant's rights are so 'indelibly prejudiced' as to necessitate a new trial." *Green*, 266 Va. at 102 (quoting *Spencer*, 240 Va. at 95). It was, however, Mid-Atlantic's burden to prove its rights were so "indelibly prejudiced" as to require a mistrial. *Id.* (quoting *Spencer*, 240 Va. at 95). We find that Mid-Atlantic did not meet this burden here. The record does not reveal signs of

---

plaintiff's narrative that Dr. Connor was absent when Kontaratos needed care. Kontaratos asserts that this latter emphasis by the defense was not expressly raised below and has been waived under Rule 5A:18. We will assume without deciding that the argument is preserved.

[5] Kontaratos counters that her arguments relating to the long delay in obtaining a trial date and the costs expended in the trial were factors relevant to suspending the trial, if necessary, rather than granting a mistrial.

prejudice—and we find the circuit court's instructions were adequate to eliminate the threat of prejudice to the defense caused by Dr. Connor's absence. *Centra Health*, 277 Va. at 81 (we presume the trial court's instructions were followed); *Stump v. Doe*, 250 Va. 57, 62 (1995) (same); *Medici v. Commonwealth*, 260 Va. 223, 229 (2000) (same).

Finally, Mid-Atlantic argues that Kontaratos' nonsuit of Dr. Connor and Dr. Morgan did not cure the prejudice that arose from Dr. Connor's absence from trial because the judgment against Mid-Atlantic was based only on its responsibility for its employees' actions. Mid-Atlantic contends that Dr. Connor remained an "important material witness" following the nonsuit and that "Mid-Atlantic should have had the benefit of having its agent, Dr. Connor, present during trial." Mid-Atlantic concludes that Kontaratos' mid-trial nonsuit of Dr. Connor did not cure "the manifest probability of prejudice that arose due to Dr. Connor's unpreventable absence from trial."

As Kontaratos notes, after she nonsuited Dr. Connor, the circuit court's analysis "shifted because Dr. Connor became a material witness for Mid-Atlantic, not a party." Mid-Atlantic still had access to Dr. Morgan throughout the trial, and Mid-Atlantic offers no authority to support its proposition that the circuit court should have halted the trial in the absence of its "preferred" material witness.[6]

Ultimately, Dr. Connor was able to attend the beginning and ending of the trial. She was able to testify before the jury. In fact, she was permitted to explain her sickness and absence from

---

[6] We do not downplay the hardship faced by Mid-Atlantic in these circumstances. However, even Mid-Atlantic does not suggest that the unavailability of a preferred material witness or representative at trial mandates a *per se* entitlement to a mistrial. Since such an absence is not a *per se* grounds for a mistrial, we are left to analyze these matters on a case-by-case basis. Here, again, Dr. Connor was nonsuited, the jury was instructed not to draw inferences from her unavailability, and the jury was ultimately informed that she had been hospitalized. In the end, she, herself, testified to the jury about her illness. Under these circumstances, the circuit court did not abuse its discretion in denying the motion for mistrial.

the trial.  Considering the totality of the circumstances, we find that the circuit court did not abuse its discretion by denying Mid-Atlantic's motion for mistrial.

## II.  Cautionary Instruction

Where the "circuit court has determined that a defendant's rights have not been prejudiced and has denied his motion for a mistrial," this Court's review "is confined to an inquiry whether the circuit court abused its discretion and, thus, was wrong as a matter of law." *Lewis v. Commonwealth*, 269 Va. 209, 214 (2005).  "The decision whether to give a cautionary instruction is a matter lying within the trial court's discretion and will not be disturbed on appeal unless the record shows an abuse of discretion." *Andrews v. Commonwealth*, 280 Va. 231, 268-69 (2010) (quoting *Goins v. Commonwealth*, 251 Va. 442, 465 (1996)).

Mid-Atlantic argues that, even if the prejudice could have been cured by an instruction to the jury, this Court should find that the instructions the circuit court provided to the jury here were "inadequate to cure the prejudice that arose."  The circuit court first informed the jury that Dr. Connor was absent due to "a very important personal matter" and subsequently informed the jury that Dr. Connor had an undiagnosed illness and was seeking medical attention.  Mid-Atlantic twice asked the circuit court to instruct the jury about Dr. Connor's hospitalization, but the circuit court again told the jury that Dr. Connor was ill and seeking medical attention, without mentioning her hospitalization.  The circuit court informed the jury of Dr. Connor's hospitalization on the eighth day of trial.[7]  Mid-Atlantic argues that "by this time, the prejudice against Mid-Atlantic had already accrued," because by being unaware of Dr. Connor's hospitalization until the eighth day of

---

[7] While Mid-Atlantic complains of the delay, the circuit court repeatedly asked for medical confirmation of Dr. Connor's medical condition.  Such confirmation was slow in arriving.  We do not fault the circuit court for requiring medical verification of Dr. Connor's condition and prognosis.

- 11 -

trial, "the jury was poised to think the worst of Dr. Connor and use that as a basis for determining that she was impermissibly absent during . . . Kontaratos' medical care."

We disagree. The circuit court provided the jury with daily instructions, building upon the information it received regarding Dr. Connor's condition. The circuit court's final instruction informed the jury that Dr. Connor had been hospitalized. The circuit court consistently reminded the jury not to make any assumptions or draw any inferences from Dr. Connor's absence and that it had approved of Dr. Connor's absence. Again, as the cautionary instructions piled up, day after day, Kontaratos noted that the instructions were evoking sympathy from the jury in favor of the stricken doctor—but the circuit court persevered with the instructions. Once Dr. Connor returned to trial, the circuit court permitted her to testify about the circumstances of her absence. As noted above, we presume the jury followed the circuit court's instructions not to draw inferences from Dr. Connor's unavailability. *Centra Health, Inc.*, 277 Va. at 81. Based on the facts of the case, we find that the circuit court did not abuse its discretion in issuing its cautionary instructions.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*